UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-27-12
```

UNITED STATES OF AMERICA

-v-

FAHD HUSSAIN, *et al.*,

                Defendants.

No. 12 Cr. 45 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

On April 23, 2012, Defendants Dore and Barrett filed separate motions to suppress. On May 29, 2012, the Court held a suppression hearing (the "Suppression Hearing") regarding the two motions and heard testimony from three government witnesses – Detective Dennis Kruse ("Kruse"), ATF Agent Michael Zeppieri ("Zeppieri"), and Deputy U.S. Marshal William Dundan ("Dundan") – and one defense witness, Janiel Brown ("Brown"), Defendant Dore's girlfriend. On June 25, 2012, the Court heard oral argument on the two motions (the "oral argument"). For the reasons both stated below and on the record at the oral argument, the Court DENIES both motions.

I. LEGAL STANDARD

Under the Fourth Amendment, "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). "To ascertain whether consent is valid, courts examine the totality of the circumstances to determine whether the consent was a product of that individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority." *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995) (explaining that an

"individual may consent to a search, thereby rendering it reasonable"); *accord United States v. Isiofia*, 370 F.3d 226, 230 (2d Cir. 2004). However, "[w]hile more than mere acquiescence in a show of authority is necessary to establish the voluntariness of a consent, the fact that a person is in custody or has been subjected to a display of force does not automatically preclude a finding of voluntariness." *United States v. Snype*, 441 F.3d 119, 131 (2d Cir. 2006); *see also United States v. Puglisi*, 790 F.2d 240, 243 (2d Cir. 1986) (listing factors that courts can consider in determining whether a defendant's consent was "voluntary"). Moreover, "when, as in this case, the government relies on consent to justify a warrantless search, it bears the burden of proving by a preponderance of the evidence that the consent was voluntary." *Id.*; *see also United States v. Miley*, 513 F.2d 1191, 1201 (2d Cir. 1975) (noting that "the credibility of . . . witnesses is a question for the judge who heard them").

## II. DEFENDANT DORE'S MOTION

In consideration of the above standard, the Court denies Defendant Dore's motion to suppress, finding that he voluntarily consented to the search of the apartment located at 3983 Carpenter Avenue, Bronx, New York (the "apartment"). Specifically, the Court finds that both Zeppieri and Dundan gave consistent, credible testimony that Dore consented to the search of the bedroom that both he and Brown occupied within the apartment. (Suppression Hearing Transcript ("Tr.") at 69–70, 87–88, 97.) To the extent that Zeppieri's and Dundan's testimony is inconsistent with Dore's affidavit and Brown's testimony at the hearing, the Court finds Zeppieri's and Dundan's testimony to be more credible and worthy of belief. Moreover, although Brown testified that she never heard Dore consent to the search of the apartment (*see, e.g., id.* at 108–10), her testimony is otherwise consistent with the testimony of Zeppieri and Dundan in all material respects, and it is possible, even likely, that she simply did not hear

Defendant Dore give consent given the commotion at the time of the search. Accordingly, the Court denies Defendant Dore's motion.

### III.  DEFENDANT BARRETT'S MOTION

As noted above, the Second Circuit has enumerated several factors relevant to determining whether, based on the totality of the circumstances, a defendant's consent was "voluntary." *Puglisi*, 790 F.2d at 243. These include: (1) a defendant's age, education, and intelligence; (2) the length of detention; (3) the "use of physical punishments or deprivations"; and (4) "whether the alleged consenting person was advised of his constitutional rights." *Id.* In addition, "in cases where consent is obtained from a person in custody, [courts consider factors such as] whether guns were drawn or the consenting individual was frisked, [and] whether the consenting individual was threatened, was in a public area, or was informed that he had the option of refusing consent to the search." *Id.* at 243–44. These factors are not exhaustive but are "simply relevant factors in determining the voluntariness of the consent." *Id.* at 244.

Having carefully considered these factors, the Court denies Defendant Barrett's motion to suppress, finding that he voluntarily consented to the search of his cell phone. As stated on the record at the oral argument, although various factors point in opposite directions as to whether Defendant Barrett gave consent, on balance, the factors indicate both that Defendant Barrett gave consent and that the "consent was a product of [his] free and unconstrained choice." *See Garcia*, 56 F.3d at 422. The Court finds that Kruse gave credible testimony that Defendant Barrett consented to the search of his cell phone by unlocking it – once when asked by Kruse and once after an intervening phone call. (Tr. at 24–27, 43–44.)

Moreover, the Court finds that the consent was voluntarily given. Although it is true that Defendant Barrett was frisked while handcuffed, was not *Mirandized*, and likely had been at the

3

police precinct for upwards of six hours at the time he consented to the search (*id.* at 15–17, 24, 43), other factors support the inference that Barrett's consent was voluntary. For instance, (1) Defendant Barrett was told that he "wasn't going to be under arrest" (an assertion that proved to be accurate, since Barrett was not arrested that evening and departed from the police station); (2) he was not handcuffed while in the interview room; (3) he was offered something to eat or drink while in the interview room; (4) he was "very calm" and "cooperative" when answering the detectives' questions; (5) and police officers worked with Barrett to accommodate a child care issue that he had previously disclosed. (*See id.* at 17–20, 34, 40–41.) Moreover, when Zeppieri separately and later asked for consent, Defendant Barrett replied, "[N]o, why should I give you permission if I've already given the other officer permission to search the phone?" (*id.* at 60), indicating that Defendant Barrett had, in fact, previously given his voluntary consent to search the phone.

Furthermore, although Defendant Barrett argues that he limited the scope of any alleged consent to Detective Kruse alone (Post-Hearing Mem. of Law in Support of Dwayne Barrett's Mot. to Suppress Physical Evidence at 10–11 (citing *Florida v. Jimeno*, 500 U.S. 248, 252 (1991))), such an argument is rendered moot, given that by the time Defendant Barrett made his statement to Zeppieri, (1) Kruse had already told Zeppieri – rightly – that Defendant Barrett had given him consent to search the phone, (2) Zeppieri had already begun looking through the contents of the phone, and (3) the contents of the phone had already begun downloading. (Tr. at 46–47, 54, 62–63, 76.) Even if the argument were not moot, the Court finds that Defendant Barrett's statements did *not* constitute a withdrawal of the previously articulated consent, but rather manifested a confirmation of the earlier consent that rendered the request by Zeppieri unnecessary and superfluous.

4

Accordingly, because the Court finds that Defendant Barrett consented to the search of his phone and that the consent was voluntarily given, the Court denies his motion to suppress.

\*   \*   \*

The Clerk of the Court is respectfully directed to terminate the motions located at Doc Nos. 28 and 33.

SO ORDERED.

Dated:   June 26, 2012
         New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE