UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | | 12 Cr. 45 (RJS) |
| - against - | : | |
| | | |
| FAHD HUSSAIN, et al., | : | |
| | | |
| Defendants. | : | |

------------------------------------------------------------------ x

**GOVERNMENT'S POST-HEARING MEMORANDUM OF LAW IN FURTHER
OPPOSITION TO DEFENDANT TAIJAY TODD'S MOTION TO SUPPRESS**

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Jessica A. Masella
Michael D. Maimin
Assistant United States Attorneys
 -Of Counsel-
UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

UNITED STATES OF AMERICA                  :

                                                          12 Cr. 45 (RJS)

   - against -                                        :

FAHD HUSSAIN, et al.,                          :

                          Defendants.       :

---------------------------------------------------------------- x

**GOVERNMENT'S POST-HEARING MEMORANDUM OF LAW IN FURTHER OPPOSITION TO DEFENDANT TAIJAY TODD'S MOTION TO SUPPRESS**

The Government respectfully submits this memorandum in further opposition to the motion filed by defendant Taijay Todd requesting the suppression of (1) statements made after his arrest; and (2) physical evidence recovered during the search of apartment 41 located in a building at 910 East 222nd Street, Bronx, New York (the "Todd Apartment"), where Todd was arrested.  In light of the evidence presented at the suppression hearing in this matter, the Todd's motion should be denied because Todd's statements were made after he read and waived his *Miranda* rights and because Todd's girlfriend, Naddia Christie voluntarily gave law enforcement agents consent to search the Todd Apartment.[1]

**The Evidence at the Hearing**

The Court held a hearing on this matter on November 12, 2012, at which the Government presented the testimony of three witnesses:  Special Agent Howard Stern of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Special Agent Eric Murray of the ATF,

---

[1] The Government also relies on its memorandum submitted on November 5, 2012, in advance of the hearing ("Gov't Mem. Nov. 5, 2012"), which contains a discussion of the relevant legal standards.  Those are not repeated herein, instead, this memorandum focuses on the limited issues raised by the evidence presented at the hearing.

and Detective Tyrone Butler of the New York City Police Department (the "NYPD"). Todd called one witness, his girlfriend, Naddia Christie (also known as Naddia Samuel). The Government introduced three exhibits at the hearing, including the advice of rights form used by Agent Stern to advise Todd of his *Miranda* rights (GX 1), the consent to search form signed by Naddia Christie (GX 2), and the video recording of the statements made by Todd after his arrest upon questioning back at the ATF office.

      On January 19, 2012, Agent Stern, Agent Murray, Detective Butler and other ATF agents and NYPD officers went to the Todd Apartment to arrest Todd pursuant to a federal arrest warrant. (Tr. 8-10 (Stern), 38-40 (Murray)).[2] The arrest team arrived at approximately 6:00 a.m. and knocked on the door to the Todd Apartment, which was opened a short time later by Naddia Christie. (Tr. 11-12 (Stern), 40-41 (Murray)). The agents encountered Todd within approximately a minute of the agents entering the Todd Apartment, and he was handcuffed and placed under arrest. (Tr. 13-14 (Stern), 44 (Murray)). The agents then continued walking through the apartment to conduct a security sweep. (Tr. 13-14 (Stern); 45 (Murray)).

      After the security sweep, Agent Stern spoke to Todd in the kitchen area. (Tr. 14 (Stern)). At that time, Agent Stern told Todd that he was under arrest, and he used an advice of rights form to advise Todd of his *Miranda* rights. (Tr. 14-15 (Stern), 46-47 (Murray); GX 1). Agent Stern read the form, one line at a time, and asked Todd whether he understood after each line that he read. (Tr. 16 (Stern)). Todd indicated that he understood, and Todd never stated that he did not understand nor did he ask any questions about the form. (Tr. 16-17 (Stern), 47 (Murray)). Agent Stern did not ask Todd to sign the form, nor did he read the "waiver" portion

---

[2] "Tr." refers to the transcript of the hearing held on November 12, 2012.

of the form, because he did not intend to question Todd at that time. (Tr. 17 (Stern)). Agent Stern signed the form and wrote the date and time on it, indicating that he read the form to Todd at 6:05 a.m. on January 19, 2012. (Tr. 15-16 (Stern); GX 1). At no time did Todd ask Agent Stern or Agent Murray for a lawyer, nor did Agent Stern hear Todd ask anyone else for a lawyer. (Tr. 19-20 (Stern), 48-49 (Murray)).

After Todd was arrested, Detective Butler spoke to Naddia Christie in the bedroom area of the Todd Apartment. (Tr. 50 (Murray)). Detective Butler spoke to Christie in a conversational tone and asked for her consent to search the apartment. (Tr. 50-51 (Murray), 77 (Butler)). Detective Butler persuaded Christie that it was a good idea to let the agents and officers search the apartment, by stating that Todd was known to have firearms and that they wanted to make sure that the apartment was safe for children when they left, among other reasons. (Tr. 51 (Murray); 76 (Butler). Detective Butler also likely told Christie that they could get a search warrant if she did not consent to a search, but that if she consented her cooperation would help with respect to their investigation and that if they had to obtain a search warrant they could do a more "thorough" search, which might be more destructive. (Tr. 76-77, 89-91 (Butler)). Detective Butler gave Christie a consent to search form, which she read and signed. (Tr. 79-81 (Butler), 114-115, 117 (Christie); GX 2).

Christie's demeanor during the conversation with Detective Butler was calm. (Tr. 52 (Murray), 82 (Butler). She raised a question about whether she would be held accountable for items found during the search, which was answered in the negative by Detective Butler. (Tr. 115-116 (Christie)). She also raised a concern that she be allowed to remain present during the search, which she was permitted to do. (Tr. 52 (Murray)). At no time did Christie ask the agents

to stop searching or withdraw her consent for the search. (Tr. 81 (Butler)). The consent to search form, which Christie appeared to read, clearly states, among other things, that:

> I understand that I have a right to refuse to give my consent to a search and may demand that a search warrant be obtained prior to any search of the person or property described below
>
> I understand that any contraband or evidence of a crime found during the search can be seized and used against me in any court of law or other proceeding.
>
> I understand that I may consult with an attorney before or during the search.
>
> I understand that I may withdraw my consent to this search at any time prior to the search's termination.
>
> This consent to search has been given voluntarily without promises, threats, coercion or force of any kind whatsoever.

(GX 2). At no time did Christie refuse to give her consent, ask to speak to an attorney, or demand that a search warrant be obtained. (Tr. 81 (Butler)).

Following Christie's oral and written consent, the agents searched the bedroom of the Todd Apartment. The search took approximately half an hour and Christie's two children were present with her in the bedroom during the search. (Tr. 82-84 (Butler)). During the search, the agents found a cellular telephone belonging to Todd, which they seized, inside of Christie's purse which was hanging behind the bedroom door. (Tr. 83 (Butler), 112-113 (Christie)).

At the hearing, for the first time, an issue was raised as to the timing of the search. In Christie's written declaration, submitted by Christie before the hearing, she stated that an agent asked her to call Todd's phone, which she did, and then she gave consent for the search, but she did not state that any searching was done or that Todd's phone was found before she gave consent. (Christie Decl. ¶¶ 9-13). At the hearing, Christie also testified that the agents "started

searching," after she gave her oral and written consent for the search of the Todd Apartment. (Tr. 118 (Christie)).  However, at the hearing, Christie for the first time stated that the agents looked inside of her purse, which was hanging behind the bedroom door, to search for Todd's cellular phone before she gave her consent for the search.  (Tr. 113 (Christie)).

      Christie's testimony is directly contradicted by Detective Butler's testimony.  Detective Butler testified that he did not perform any physical search of the Todd Apartment prior to obtaining Christie's consent to search and that he did not see any other agent doing so.  (Tr. 102 (Butler)).  Although Detective Butler could not recall specifically which agent recovered the phone or where it was recovered from, Detective Butler was clear that if the phone was not in plain view, then it was part of the "search," which was not conducted until after consent had been obtained from Christie.  (Tr. 102-103 (Butler)).

## Discussion

### I.    Todd Voluntarily Waived His *Miranda* Rights Before Making Statements

      Todd's post-arrest statements are admissible because was advised of, and voluntarily waived, his *Miranda* rights before making any statements.  Todd has raised two issues of fact with respect to the admissibility of his post-arrest statements.  First, Todd claims that he "was not advised of [his *Miranda*] rights when [he] was arrested or when [he] was transported in the car to the agents' office."  (Todd Decl. ¶ 4).  Second, Todd claims that he "told [the arresting agents] he needed an attorney."  (Todd Decl. ¶ 4).  The evidence at the hearing made clear that Todd was, in fact, advised of his *Miranda* rights shortly after his arrest and that Todd never told the arresting agents that he needed an attorney.  Accordingly, his post-arrest statements are admissible.

At the hearing, both Agents Stern and Murray testified that Agent Stern administered *Miranda* warnings to Todd, by reading them from the ATF Statement of Rights form. Agent Stern asked Todd whether he understood each right, and Todd indicated that he did. Todd never asked any questions about his rights, never stated that he did not understand, and never asked for a lawyer.

Balanced against the sworn statements of these two ATF agents, Todd has offered only his own self-serving declaration stating that he was not advised of his *Miranda* rights and that he asked for a lawyer. Todd chose not to testify at the hearing. Given that Todd's statements were not subject to cross-examination, and that he has a significant personal interest in the outcome here because he is the defendant in this case, his statements are not credible in light of the contrary testimony of Agents Stern and Murray.

Moreover, it is of no significance that Agent Stern did not ask Todd to sign the *Miranda* waiver form or that he did not read the "waiver" portion of the form. It is well-settled that a wavier of *Miranda* rights may be express or implied. *See Berghuis* v. *Thompkins*, 130 S. Ct. 2250, 2262 (2010). "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id*. There is no "formalistic wavier procedure that a suspect must follow to relinquish [his *Miranda*] rights." *Id.* Indeed, once the Government has established that a defendant has been provided with his *Miranda* rights and understands them, the defendant need not sign any formal waiver. To the contrary, "the relevant inquiry is whether the defendant 'unambiguously' invoked his *Miranda* rights." *United States* v. *Plugh*, 648 F.3d at 124 (quoting

*United States* v. *Berghuis*, 130 S. Ct. at 2260). Accordingly, even a "refusal to sign a waiver of rights form" does not constitute invocation of a defendant's *Miranda* rights. *Id.* at 125.

Thus, because the evidence at the hearing amply established that Todd was given his Miranda warnings, and voluntarily waived them, before making any statements, those statements are admissible.

**II.     Christie Gave Voluntary Consent For The Search Of The Todd Apartment**

The evidence seized from the Todd Apartment is admissible because it was seized after the law enforcement agents received the voluntary consent of Christie before searching the apartment. In his initial motion, Todd appeared to argue that the consent given by Christie was somehow not voluntary. At the hearing, Todd appeared to argue, for the first time, that the agents seized a cellular phone and conducted a search before any consent was obtained, whether voluntary or not. Both arguments are meritless.

The evidence at the hearing established that Christie gave her voluntary consent for a search of the Todd Apartment. Detective Butler obtained verbal and written consent from Christie after speaking to her in a calm and conversational tone. Detective Butler provided Christie with a consent to search form, which she read and signed. Christie asked questions about certain statements set forth on the form, but never refused consent, asked for a lawyer, or limited her consent to search in any way. Although there were many armed law enforcement agents present, the evidence at the hearing made clear that Christie was calm and that she gave her consent only after reading the written form and discussing it with Detective Butler, who provided truthful answers to her questions.

As set forth in the Government's memorandum dated November 5, 2012, the fact that Detective Butler told Christie that he could try to obtain a search warrant if she did not consent, and that a search pursuant to a warrant would be more "thorough," does not negate the voluntariness of Christie's consent. (*See* Gov't Mem. Nov. 5, 2012 at 14-15.) The Second Circuit has long held that consent based on "the well founded advice of a law enforcement agent that, absent a consent to search, a warrant can be obtained" is voluntary. *United States* v. *Memoli*, 166 Fed. Appx. at 571 (quoting *United States* v. *Vasquez*, 638 F.2d at 529); *see also*, *e.g.*, *United States* v. *Pena Ontiveros*, 547 F. Supp. 2d 323, 331 (S.D.N.Y. 2008) (Sullivan, J.) (Noting that the Second Circuit had previously deemed consent "valid where an individual was told that the officers could obtain a warrant" (citing *United States* v. *Calvente*, 722 F.2d 1019, 1023-24 (2d Cir. 1983). That was a truthful statement of Detective Butler's intent, and it does not call into question the voluntariness of Christie's written and oral consent.

For the first time at the hearing, Todd appeared to raise an issue as to the timing of the consent. Christie testified that Todd's cellular phone was found before she gave any consent for a search; despite the fact that her declaration clearly avoids directly stating that fact. Balanced against her testimony at the hearing, Detective Butler testified that no search was performed before Christie's consent was obtained. Detective Butler's testimony is more credible, and the Court should rely on it in finding that Christie's consent was given before any search was conducted.

As an initial matter, Christie has a close personal relationship with Todd. She has a relationship with Todd, and they have a one-year old child together. Where, as here, a witness has a close personal relationship with the defendant, the credibility of her testimony "must be

viewed in light of [her] motivation in the case." *United States* v. *Harris*, No. 11 Cr. 92 (RPP), 2011 WL 3273241, at *12 (S.D.N.Y. July 27, 2011) (finding testimony of defendant's friend less credible and entitled to less weight than that of law enforcement witnesses, because the friend "has a motivation to assist his friend in evading prosecution by testifying in his favor"); *United States* v. *Thomson*, No. 10 Cr. 94 (JSR), 2010 WL 3069668, at *3 (S.D.N.Y. July 29, 2010) (finding testimony of defendant's brother not credible based on his guarded and evasive responses to questioning and his "obvious motive to say that he did not consent to the officers' entry, as testifying to the contrary would aid the Government's prosecution of his older brother"). Moreover, Christie's testimony is not credible because she did not explicitly state that the agents' search for the cellular phone occurred before she gave her consent for the search in her initial sworn declaration. Instead, that document is ambiguous with respect to the question of the chronology. It was not until she testified at the hearing that she stated that the agents conducted any search before her consent was obtained. Because the chronology is obviously an important detail, the fact that she changed her testimony on this point should lead the Court to find her testimony at the hearing incredible at least on this point.

Finally, even putting aside her personal interest in the case, Detective Butler's testimony is more credible because it makes the most sense in light of all of the circumstances. It is clear from his testimony that, from the moment he began speaking with Christie, he was going to attempt to obtain her consent for a search of the Todd Apartment. Detective Butler was initially focused on weapons, and whether there might be any items in the house that could pose a danger or be used as evidence against Todd with respect to the armed robbery charges that Todd was facing. Even though Detective Butler does not recall specifically when the phone was recovered,

or by whom, Detective Butler's memory is that his motivation was to search for weapons or other illegal items, and that the "phone came about after." (Tr. 87 (Butler)). His testimony was clear that no physical search was performed before Christie's consent, and his testimony on that point is credible. It makes no sense that Detective Butler would somehow obtain written consent from Christie to search for weapons, illegal items, or other valuable evidence, and at the same time search, without consent, for a cellular phone, which might not even be important or relevant to the investigation of Todd. Moreover, Detective Butler did not even have any personal stake in this particular case; instead, he was present only to help with the arrest of Todd on January 19, 2012 and did not have any role with the investigation of Todd, before or after that date. Accordingly, the Court should find that Detective Butler's testimony is credible, and it establishes that the search of the Todd Apartment was conducted only after he obtained voluntary consent from Christie for the search.

## Conclusion

For the reasons stated above, the Court should deny Todd's motion to suppress.

Dated: New York, New York
November 19, 2012

Respectfully submitted,

PREET BHARARA
United States Attorney

By:    s/   Jessica A. Masella
Jessica A. Masella
Michael D. Maimin
Assistant United States Attorneys
(212) 637-2288/2238

## CERTIFICATE OF SERVICE

JESSICA A. MASELLA deposes and says that she is employed in the Office of the United States Attorney for the Southern District of New York.

That on November 19, 2012, she caused to be served a copy of the foregoing Government's Post-Hearing Memorandum of Law in Further Opposition to Defendant Taijay Todd's Motion to Suppress, by filing it via the Electronic Case Filing system.

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

Executed on:   New York, New York
               November 19, 2012

                                                                                     s/ Jessica A. Masella
                                                                                     Jessica A. Masella