USDS SDNY
DOCUMENT
ELECTRONIC
DOC #: _____
DATE FILE 3-11-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v-

JERMAINE DORE and DWAYNE BARRETT,

Defendants.

No. 12 Cr. 45 (RJS)

ORDER

RICHARD J. SULLIVAN, District Judge:

Upon a motion made by Defendants, the Court held a *Daubert* hearing on March 6, 2013 concerning the testimony of the government's ballistics expert, Detective Jonathan Fox. Pursuant to Rule 702 of the Federal Rules of Evidence, the district court is required to determine the reliability and relevance of expert testimony before deeming it admissible. However, as the Second Circuit has noted, "the district court's inquiry into the reliability of expert testimony under Rule 702 is a 'flexible one,'" *U.S. v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993)), and the court has "'the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination,'" *id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999)) (emphasis in original).

The Court has considered the testimony by Detective Fox at the hearing and the relevant case law in deciding this motion. First, the Court finds that the government has not carried its burden of establishing that ballistics identification is a "science." Prior opinions in this district and elsewhere – including Judge Rakoff's opinion in *Glynn* – discuss both that the theory of uniqueness on which Detective Fox relies to draw his conclusions has not been definitively

proven and that the methodology employed by ballistics experts is largely subjective. *See, e.g., U.S. v. Glynn*, 578 F. Supp. 2d 567, 570-71 (S.D.N.Y. 2008). As was done in other cases, Detective Fox explained in some detail how markings come to appear on shell casings as well as the theory of uniqueness; however, the government did not offer any persuasive evidence that would cause this Court to depart from Judge Rakoff's conclusion that this theory has not been empirically proven as a matter of science.

The Court also finds that the government has not established that Detective Fox has a reliable basis for stating that the "match" he detected can be stated to any specific degree of certainty. Once again, the Court adopts the reasoning in the *Glynn* opinion, which notes the lack of any objective or measurable standard for declaring a match, and the government has provided no persuasive reason to depart from this reasoning. *Id.* at 571-72. Indeed, when pressed on the issue, Detective Fox admitted that the determination of whether or not a match existed is a subjective determination that the quality and quantity of similar markings on two shell casings is sufficient. (Tr., dated March 6, 2013 ("Tr."), 461:14-462:1). He was unable to articulate a definition or standard for measuring "sufficiency," but, in essence, testified that he "knows it when he sees it" based on his experience and training. (Tr. 419:5-7). Detective Fox's testimony that no colleague of his has ever disputed his conclusions is insufficient to establish his level of precision in the way a double-blind test might. (Tr. 432:20-433:13, 473:11-475:16). Similarly, his reference to a nationwide error rate for a test administered to various CTS-certified firearms examiners (Tr. 475:18-476:20), without more detail as to how the test is conducted and the methods used, is likewise insufficient to establish a reliable error rate for ballistics identification experts.

2

For these reasons, consistent with the *Glynn* opinion, the Court holds that Detective Fox will be prohibited from referring to his methodology or the principles he relies upon as "science" or "scientific." *See Glynn*, 578 F. Supp. 2d at 570-71. Detective Fox is also prohibited from using language that implies a specific degree of certainty as to his conclusion that there is a match between the shell casings. For instance, he may not state that it is a "practical impossibility" that the shells came from different firearms, that he is "absolutely certain", or anything of that sort.

However, Detective Fox will be able to testify as to how markings are created on shell casings, the methodology that he employed – including a description of class, sub-class and individual characteristics – and state his opinion that the shell casings came from the same firearm. As discussed in detail by other cases – including *Glynn*, *Monteiro*, and *Green* – while the ballistics identification methodology employed by Detective Fox and others may not rise to the level of "science," it is sufficiently reliable to be admissible pursuant to Rule 702. *See id.* at 571-74; *U.S. v. Monteiro*, 407 F.Supp.2d 351 (D.Mass. 2006); *U.S. v. Green*, 405 F. Supp. 2d 104 (D. Mass. 2005). Indeed, the Court is aware of no case which a ballistics expert has not been permitted to testify or offer some opinion. No party has provided a persuasive reason to depart from this approach.

Some courts have specifically defined the exact degree of certainty to which a ballistics expert may testify. *See, e.g., Glynn*, 578 F. Supp. 2d at 574-75; *Monteiro*, 405 F. Supp. 2d at 124. The Court declines to do so here, however, as such line-drawing in and of itself seems arbitrary. Instead, limiting the expert from stating a degree of certainty (including a high or absolute) degree of certainty, along with permitting cross examination by Defendants as to the witness' background, methods and conclusion, seems sufficient. However, if Defendants ask or

3

challenge the witness to define his specific degree of certainty, thus "opening the door" to this issue, the Detective will be permitted to provide his full opinion.

Finally, the Court requires that, in offering his opinion, Detective Fox must first fully explain the methodology that he employed in formulating his opinion – including by discussing the photographs relied upon in the *Daubert* hearing – in order to aid the jury in evaluating the weight it will give to his conclusion and to permit Defendants to cross examine him on these areas.

SO ORDERED.

Dated:   March 11, 2013
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE