UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
UNITED STATES OF AMERICA
:
       - v. -                                         S2 12 Cr. 45 (RJS)
:
JERMAINE DORE,
     a/k/a "St. Kitts,"                        :
     a/k/a "Blaqs,"
:
         Defendant.
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S RESPONSE TO DEFENDANT JERMAINE DORE'S MOTION TO WITHDRAW AS COUNSEL AND FOR A MISTRIAL**


                                                      PREET BHARARA
                                                      United States Attorney for the
                                                      Southern District of New York
                                                      One St. Andrew's Plaza
                                                      New York, New York 10007


Amy Lester
Michael D. Maimin
Jessica A. Masella
Assistant United States Attorneys
 -Of Counsel-

**TABLE OF CONTENTS**

I.   Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.   Janiel Brown's Testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     B.   Dore's Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.  Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.   Attorney Fontier's Testimony Would Be Inadmissable. . . . . . . . . . . . . . . . . 6

          1.   Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          2.   Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     B.   Even If Attorney Fontier's Testimony Were Admissible, There Are
          Alternative Methods Of Providing The Jury With Any Relevant
          Information Short of Attorney Fontier Testifying. . . . . . . . . . . . . . . . . . . . . 14

     C.   Even If This Court Permits Attorney Fontier To Withdraw As Counsel, No
          Mistrial Is Necessary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                                    :
UNITED STATES OF AMERICA
                                                                    :
        - v. -             S2 12 Cr. 45 (RJS)
                                                                    :
JERMAINE DORE,
  a/k/a "St. Kitts,"
  a/k/a "Blaqs,"                                           :

     Defendant.                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


**GOVERNMENT'S RESPONSE TO DEFENDANT JERMAINE DORE'S MOTION TO WITHDRAW AS COUNSEL AND FOR A MISTRIAL**

The Government respectfully submits this memorandum of law in opposition to the motion filed by Alice L. Fontier, Esq., counsel for defendant Jermaine Dore, seeking to withdraw as counsel and, as a corollary, for a mistrial (the "Motion"). For the reasons set forth herein, both forms of relief sought in the Motion should be denied.

**I. Introduction**

Jermaine Dore is presently on trial, charged with seven counts arising from a series of violent robberies committed by Dore and his co-conspirators, one of which resulted in the murder of an intended robbery victim. That murder, the underlying conduct of which is the subject of Count One, Overt Act i, and Counts Five through Seven, occurred on December 12, 2011.

  **A. Janiel Brown's Testimony**

Dore's former girlfriend, Janiel Brown, testified as a Government witness at trial over two days: March 6, 2013 and March 7, 2013. (Tr. 241-404, 491-544). Brown's testimony – which discussed, in detail, the criminal activities of Dore and his co-defendant, including

Brown's own participation in some of those activities – was extensive: the direct examination constituted approximately 104 pages of testimony; Dore's cross-examination constituted approximately 44 pages of testimony, Barrett's cross-examination constituted approximately 55 pages of testimony, and redirect and recross examination constituted approximately 11 additional pages of testimony.

Brown had previously testified in connection with a suppression motion that Dore made in this case. She repeatedly admitted, during trial, upon examination by each of the parties, that she lied at that suppression hearing. (Tr. 246-47, 348, 528-29, 540-42). Brown also testified that she lied to Attorney Fontier at one or more meetings regarding the case. (Tr. 355).

Attorney Fontier's co-counsel, Ying Stafford, cross-examined Brown. One of the subjects that Attorney Stafford explored with Brown was whether Brown had initially provided Attorney Fontier with a potential alibi for Dore for the December 12, 2011 murder. In particular, Brown told Attorney Fontier that Dore was with her while shopping in Co-Op City on December 12, 2011, including when Brown deposited money into and withdrew money from an ATM. (Tr. 351-52). Brown provided Attorney Fontier with a bank record showing that Brown's ATM deposits/withdrawals occurred at approximately 11:59 p.m. (that is, a minute before midnight). (Tr. 351-53; Defendant's Exhibit A). Attorney Fontier had previously provided Brown with discovery in this case, including police and Sprint reports indicating that the murder occurred on December 12, 2011 at around noon (that is, approximately twelve hours before Brown visited the ATM in Co-Op City). (*See, e.g.*, Discovery Bates Stamp # 000933 (Sprint report showing car jacking radio run at 11:58 a.m. on December 12, 2011); Discovery Bates Stamp # 000865 (Crime Scene Unit report setting forth initial "activity time" as 1:15 p.m. on December 12, 2011)).

However, Brown testified that, when she provided the ATM information to Attorney Fontier, she knew the date of the murder, but not the time. (Tr. 358, 361-63). Brown explained: "I knew it was in relation to December 12. I didn't pay attention to the time at that point, no." (Tr. 361-62). Brown explained that Attorney Fontier said she would have an investigator look into the ATM transaction, and later told Brown that the ATM transaction occurred at a time that did not create an alibi, and so did not pursue the matter further:

> I provided Ms. Fontier with the transaction information. She said, okay, I'm going to have an investigator look into it. When she came back she said it me that the times were not correct which is why it went no further. There was no substance for it to say, okay, then Jermaine was with you at the time when this robbery took place. There was no substance which is why it went no further and I had to keep trying to find other information and other alibis, supposedly, for him, which came to nothing.

(Tr. 364).

However, Brown explained, at length, that the reason that she provided Attorney Fontier with this information was because she believed it could create an alibi for Dore, and because Dore had asked her to do so:

> Q. But you were convinced that he was with you at the time of the homicide?
>
> A. At the time, yes.
>
> Q. So you were convinced he had nothing to do with the murder?
>
> A. At the time, yes.
>
> Q. But you just provided testimony not too long ago that Mr. Dore told you that he was involved in a murder.

3

| | | |
|---|---|---|
| A. | I was convinced to tell Ms. Fontier that he wasn't. After all, he is -- she is his attorney. | |
| Q. | After all she is his attorney. | |
| A. | Yes. | |
| Q. | Can you please explain what that means? | |
| A. | Meaning I'm following Jermaine's direction of what I am and am not supposed to tell her. | |
| Q. | Let's see. You just said that you were convinced, yourself, that Jermaine was with you at the time of the murder? | |
| A. | Not knowing when it took place, yes. | |
| Q. | So, your testimony is Jermaine was with you at the time of the murder? | |
| A. | My testimony is he was with me on December 12. | |

(Tr. 364-65).

### B. Dore's Motion

On March 11, 2013, Attorney Fontier moved to withdraw as counsel for Dore so that she could testify, and, on her client's behalf, for a mistrial predicated on her requested withdrawal and testimony.

In conjunction with the Motion, Attorney Fontier submitted a declaration (the "Declaration" or "Decl."). In the Declaration, Attorney Fontier disputed Brown's testimony regarding when Brown learned of the time of the murder, stating that, at her meeting with Brown, Attorney Fontier "discussed the time and date of the homicide with Ms. Brown and we reviewed the discovery. She was informed that the homicide took place at about noon somewhere between Mount Vernon and the Bronx." (Decl. ¶ 7). According to the Declaration, "Ms. Brown informed

me, during the meeting in my office, that if the murder took place at noon on December 12, 2012 [*sic*], Mr. Dore could not have been the person that committed the murder, because he was with her in Co-Op City shopping and going to the bank at that date and time." (Decl. ¶ 8). Although the Declaration does not say so, it is apparent that Brown provided Attorney Fontier with the bank records from December 12, 2011, as Attorney Fontier's notes referred to an "11:59 deposit." (Decl. ¶ 9).[1] The Declaration also states that Attorney Fontier "never informed Ms. Brown that the alibi she had provided was incorrect, due to the time of the homicide." (Decl. ¶ 19).

In short, the two issues of contention between Attorney Fontier and Brown are: (1) whether Brown knew about the time of the murder before she provided the information about the ATM transaction to Attorney Fontier; and (2) whether Attorney Fontier ever informed Brown that the ATM transaction did not provide Dore with an alibi.[2]

Attorney Fontier filed the Motion, arguing:

> Here, my testimony regarding the conversations [I] had with Janiel Brown would be admissible to rebut her testimony. Her credibility about the homicide is central to this case, as she also testified that Mr. Dore committed a "duppy" on that date – a term she defines as shooting someone and killing them. She is the only person to have heard this alleged admission, and no one else has placed Mr. Dore at the scene of this crime.

---

[1] Notably, Attorney Fontier did not note that the deposit occurred at 11:59 p.m., approximately 12 hours after the homicide. (Decl. ¶ 9).

[2] In Dore's memorandum of law in support of the Motion (the "Memorandum" or "Mem."), Dore states that there is an additional discrepancy: "Ms. Brown was aware that an investigator was retained to attempt to corroborate the alibi." (Mem. 2). This does not contradict Brown, who testified that Attorney Fontier "said, okay, I'm going to have an investigator look into it." (Tr. 364).

(Mem. 3). Attorney Fontier did not explain in what way her "rebuttal" of Brown's testimony would be relevant, material, non-cumulative, or non-collateral. Rather, having simply made the bald assertion that her testimony would be "admissible," Attorney Fontier sought to withdraw from the case because "Mr. Dore has [the] right to call his counsel as a witness on his behalf, and counsel may not be both a witness and trial counsel." (Mem. 2). From this, Attorney Fontier sought the extraordinary relief of a mistrial, "[a]s it is not possible for me to testify at this trial." (Mem. 4).

## II.   Discussion

A mistrial should not be granted for at least three reasons: (1) Attorney Fontier's proposed testimony would be inadmissable, and therefore it is unnecessary for her to withdraw as counsel in order to testify; (2) even if Attorney Fontier's proposed testimony were admissible, there are alternative methods of providing a basis for Dore's arguments short of having Attorney Fontier take the stand; and (3) even if Attorney Fontier were to withdraw as counsel, a mistrial is not necessary, as Attorney Stafford can continue as trial counsel.

### A.   Attorney Fontier's Testimony Would Be Inadmissible

Attorney Fontier's argues that she could impeach Brown's testimony in two regards: "Ms. Brown was well-aware of the time of the homicide prior to informing counsel that Mr. Dore had an alibi," and that "Ms. Brown was aware that an investigator was retained to attempt to corroborate the alibi." (Mem. 2). Such impeachment would be collateral at best, and confusing to the jury at worst. As such, Attorney's Fontier's proposed testimony – which is extrinsic evidence of the purported falsehood of Brown's testimony – is inadmissible.

### 1. Applicable Law

It is generally proper to cross-examine a witness by asking the witness whether he or she has made statements in the past inconsistent with his or her trial testimony.[3] See Fed. R. Evid. 613(b). However, where the allegedly inconsistent prior statement relates to a collateral topic – that is, one not relevant to the issues in the case – cross-examining counsel is bound by the answer given by the witness. If the witness denies having made the allegedly inconsistent prior statement, counsel may not seek to impeach that denial by offering extrinsic proof of the prior statement. Rather, the Second Circuit has held that "a witness may be impeached by extrinsic proof of a prior inconsistent statement only as to matters which are not collateral, *i.e.*, as to those matters which are relevant to the issues in the case and could be independently proven." *United States* v. *Blackwood*, 456 F.2d 526, 530 (2d Cir. 1972); *see also United States* v. *Purdy*, 144 F.3d 241, 245-46 (2d. Cir. 1998) ("Extrinsic evidence offered for impeachment on a collateral issue is properly excluded"); *United States* v. *Bitterman*, 320 F.3d 723, 727 (7th Cir. 2003) ("it is well-settled that 'one may not impeach by contradiction regarding collateral or irrelevant matters' . . . and that a party may not 'contradict for the sake of contradiction'"); *United States* v. *Walker*, 930 F.2d 789, 792 (10th Cir. 1991) (trial court properly precluded witness from testifying as to

---

[3] Here, Attorney Fontier proposes to impeach Brown both through Brown's own purported inconsistent statements (*see* Decl. ¶ 8) and Attorney Fontier's own prior statements to Brown (*see* Decl. ¶ 7). This does not detract from the analysis, as impeachment on a collateral matter by extrinsic evidence is generally barred, and not just with respect to certain statements. *See, e.g., United States* v. *Shoreline Motors*, 413 Fed. App'x 322, 329 (2d Cir. 2011) (summary order) ("we have recognized that cross-examination is generally the proper mechanism by which to test an adverse witness's credibility, and the use of extrinsic evidence to further pursue questions posed on cross-examination is generally not permitted" (citing *United States* v. *Masino*, 275 F.2d 129, 133 (2d Cir. 1960)).

another witness's inconsistency related to a collateral matter; discretion to limit impeachment on collateral matters "stems from trial judge's power under Fed. R. Evid. 403 to exclude evidence which is more prejudicial, misleading or confusing than probative").  Were the rule otherwise, trials would quickly turn into never-ending sideshows about matters unrelated to the guilt or innocence of the defendant.

This bar on proving prior inconsistent statements with extrinsic evidence is entirely consistent with Federal Rule of Evidence 608(b), which generally prohibits the admission of extrinsic evidence on a collateral issue.  Rule 608(b) provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence."  Fed. R. Evid. 608; *see also United States* v. *Purdy*, 144 F.3d at 245-46 ("[e]xtrinsic evidence offered for impeachment on a collateral issue is properly excluded"; defense correctly precluded from calling agent to impeach government witness regarding exact number of kickback-procured contracts); *Ricketts* v. *Hartford*, 74 F.3d 1397, 1413 (2d Cir. 1996) (offer of hospital records to impeach testimony that excessive force not used); *United States* v. *Scotti*, 47 F.3d 1237, 1248 (2d Cir. 1995) (proper to preclude testimony of defense witness regarding acts of extortion by victim offered solely for impeachment purposes); *United States* v. *Dorfman*, 470 F.2d 246, 248 (2d Cir. 1973) (no error in excluding extrinsic evidence showing witness had made inconsistent statements).  Even considering this evidence under the rubric of "impeachment by contradiction," *see United States* v. *Garcia*, 900 F.2d 571, 575 (2d Cir. 1990), "extrinsic evidence (*i.e.*, evidence offered through another witness) is admissible to impeach by contradiction only if the prior testimony being contradicted is itself material to the case at hand."  4 Joseph M. McLaughlin, *et al.*, Weinstein's

8

Federal Evidence § 608.20[3][a] (2d ed. 2003)). "A collateral contradiction is typically one on a point not related to the matters at issue, but designed to show that the witness' false statement about one thing implies a probability of false statements about the matters at issue." *United States* v. *Higa*, 55 F.3d 448, 452 (9th Cir. 1995) (citing Charles T. McCormick, Handbook of the Law of Evidence § 47 at 97-98 (Edward W. Cleary revisor, 2d ed. 1972)).

Moreover, under Federal Rule of Evidence 403, "the district court may exclude even relevant evidence if it finds that 'the probative value of the testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *United States* v. *Crowley*, 318 F.3d 401, 417 (2d Cir. 2003) (quoting Fed. R. Evid. 403).

This Court enjoys broad discretion to decide evidentiary issues. *See*, *e.g.*, *United States* v. *Khalil*, 214 F.3d 111, 122 (2d Cir. 2000).

    **2.**    **Analysis**

Attorney Fontier's proposed testimony has no relevance – much less material relevance – on non-collateral matters. Dore has proposed only two subjects on which Attorney Fontier's proposed testimony would allegedly contradict Brown: (1) "Ms. Brown was well-aware of the time of the homicide prior to informing counsel that Mr. Dore had an alibi," and (2) "Ms. Brown was aware that an investigator was retained to attempt to corroborate the alibi." (Mem. 2). The second subject does not even contradict Brown, who testified that Attorney Fontier "said, okay, I'm going to have an investigator look into it." (Tr. 364).

The first subject is entirely collateral. Whether Brown knew the time of the murder before discussing the ATM transaction with Attorney Fontier is not material to what Dore did on

9

December 12, 2011, whether it is commit the murder or admit to Brown that he had been involved with a murder. First, there is can be no question that Dore's presence – or non-presence – at the ATM transaction does not, in fact, create an alibi, as the ATM transaction occurred approximately 12 hours after the murder. Second, both Attorney Fontier and Brown agree that Brown attempted to provide an alibi for Dore when Brown met with Attorney Fontier by claiming that Dore was with Brown at the time of the ATM transaction.

Rather, the "contradiction" appears to give rise to only two arguments: (1) Brown lied about when she determined that the murder occurred at a different time than the ATM transaction, and is therefore generally incredible; and (2) Brown believed that there was a potential alibi defense, which implies that she did not believe that Dore actually committed the murder, thus undermining her testimony that Dore admitted to the murder. The first argument – one of general credibility – fits within the classic definition of a collateral issue. *See*, *e.g.*, *United States* v. *Treacy*, 639 F.3d 32, 45 (2d Cir. 2011) ("A general attack on credibility is, concededly, a collateral matter" (citing *United States* v. *Cardillo*, 316 F.2d 606, 611 (2d Cir. 1963))); *United States* v. *Shoreline Motors*, 413 Fed App'x at 329 ("cross-examination is generally the proper mechanism by which to test an adverse witness's credibility"); *United States* v. *Rivera*, 273 Fed. App'x 55, 58 (2d Cir. 2008) (summary order) (holding that proof of an undisclosed murder allegedly committed by a cooperating witness was a collateral matter that could not be proved by extrinsic evidence); *Purdy*, 144 F.3d at 245-46 (holding that mere impeachment of testimony would have been a collateral issue that could not be proved by extrinsic evidence). The second argument is simply irrelevant because, irrespective of when Brown learned that the murder occurred around noon, she has already testified that, when speaking with Attorney Fontier, she

was attempting to provide an alibi for Dore and that, at the time, she believed that she may have been with Dore at the time of the murder:

> Q. On several occasions and you spoke to [Attorney Fontier] about December 12th, 2011; isn't that correct?
>
> A. Yes.
>
> Q. And you told her that on December 12, 2011 that you were shopping in Co-op City in the Bronx. Isn't that true?
>
> A. That's correct.
>
> Q. And you provided her with bank records, isn't that correct?
>
> A. That's correct.
>
> Q. And you provided her with bank records that showed that you had made several withdrawals and deposits in Co-op City at 11:59 on December 12, 2011. Isn't that true?
>
> A. That's correct.
>
> Q. And the reason why you told Ms. Fontier about this is because you told her that Jermaine Dore was with you at the time, right?
>
> A. Yes.
>
> \* \* \*
>
> Q. So, Ms. Brown, you brought these documents to Ms. Fontier to prove that Mr. Dore was with you the day of December 12, 2011; isn't that true?
>
> A. Yes.
>
> \* \* \*
>
> Q. And that day was important because December 12, 2011, was the day of the alleged homicide?

A. That's correct.

Q. And you wanted to convince Ms. Fontier that Mr. Dore was with you because you wanted to testify on his behalf. Isn't that true?

A. I wanted to tell her that he was with me, not to testify on his behalf at that moment.

Q. At that moment?

A. I was not asked to testify in relation to the December 12th event. I was asked to testify about what took place on the search that morning when he got arrested. I was never asked to testify in relation to the December 12th event.

Q. Okay.

But you went there because you had read the discovery and you knew that the government was alleging that Mr. Dore had been involved in a homicide and you wanted to convince Ms. Fontier that Mr. Dore was with you and could not have been at the scene of the crime, isn't that true?

A. Yes.

* * *

Q. But you were convinced that he was with you at the time of the homicide?

A. At the time, yes.

Q. So you were convinced he had nothing to do with the murder?

A. At the time, yes.

Q. But you just provided testimony not too long ago that Mr. Dore told you that he was involved in a murder.

A. I was convinced to tell Ms. Fontier that he wasn't. After all, he is -- she is his attorney.

12

> Q. After all she is his attorney.
>
> A. Yes.
>
> Q. Can you please explain what that means?
>
> A. Meaning I'm following Jermaine's direction of what I am and am not supposed to tell her.
>
> Q. Let's see. You just said that you were convinced, yourself, that Jermaine was with you at the time of the murder?
>
> A. Not knowing when it took place, yes.

(Tr. 351-52, 354-55, 364-65). Brown also testified that, when she "went to Ms. Fontier to convince her that Mr. Dore was with [Brown] and was not involved in the murder," she was not telling the truth. (Tr. 355).

Accordingly, any additional testimony intended to "rebut" Brown's testimony by demonstrating that she believed, at one point, that she could find a working alibi for Dore would be immaterial, irrelevant, cumulative, and confusing[4] – not to mention collateral[5] – and would therefore be inadmissible. Because Attorney Fontier has not proffered a legitimate basis for the

---

[4] There is another basis to believe that such testimony would be confusing. Attorney Fontier states: "Ms. Brown informed me, during the meeting in my office, that if the murder took place at noon on December 12, 2012 [*sic*], Mr. Dore could not have been the person that committed the murder, because he was with her in Co-Op City shopping and going to the bank at that date and time." (Decl. ¶ 8). Brown testified to almost the exact same conversation, except instead of using "noon" as the relevant time, she used "11:59." (Tr. 351-52). This explains the supposed conflict: where Brown said "11:59," Attorney Fontier assumed she was talking about noon. (*See also*, Decl. ¶ 9 (Attorney Fontier's notes, outlining an "11:59 deposit" in juxtaposition to an "11:58" carjacking)).

[5] Indeed, the Memorandum states that the import of Brown's testimony to be "rebutted" is that Brown "testified that Mr. Dore committed a 'duppy' on that date." (Mem. 3). The question of when she learned of the time of the murder is clearly collateral to that issue.

13

admissibility of her proposed testimony – nor can she – she could not be a witness in this case and need not withdraw as counsel.

      **B.**      **Even If Attorney Fontier's Testimony Were Admissible, There Are Alternative Methods Of Providing The Jury With Any Relevant Information Short of Attorney Fontier Testifying**

In light of the limited nature of Attorney Fontier's testimony, if this Court were to determine that some narrow aspect were admissible, the parties could stipulate to a fact or even to testimony rather than place Attorney Fontier on the stand.[6] For example, Brown admitted that she received Dore's discovery. If the fact that the discovery included the approximate time of the murder were admissible, the parties could simply stipulate to that fact.

No such alternative remedies were proposed by counsel. Rather, counsel – informed of the fact that Brown would testify before the jury was sworn and, therefore, before jeopardy attached – chose to stay silent and not raise the issue of her prior communications with Brown about what she now considers to be an issue of such materiality that a mistrial is warranted. Indeed, the issue was not raised until Attorney Stafford first asked about the conversations on cross-examination. Much as a prosecutor may not knowingly create an issue, without notice, that renders a defense counsel a witness-advocate, *see Ramchair* v. *Conway*, 601 F.3d 66, 71 (2d Cir.

---

[6] The Affidavit does not state whether anyone else was party to the purported conversations between Attorney Fontier and Brown – if so, of course, that person could be called to testify if the testimony were otherwise admissible.

2010),[7] defense counsel should not be permitted to preview the Government's case and then insert herself as a witness, necessitating a mistrial.

Here, if there is any testimony that "rebuts" Brown's testimony that properly belong before the jury, alternative means of providing that testimony to the jury should be explored long before the drastic remedy of a mistrial is considered.

    **C.    Even If This Court Permits Attorney Fontier To Withdraw As Counsel, No Mistrial Is Necessary**

Attorney Fontier asserts that she must withdraw as counsel so that she may testify on her client's behalf. (Mem. 2-3). That does not leave Dore without counsel, however. Attorney Stafford filed a notice of appearance on behalf of Dore a full month before trial. (*See* Docket # 114, Feb. 4, 2013). She has been an active participant in the trial – indeed, she cross-examined Brown about the very matters at issue in the Motion. If Attorney Fontier believes it necessary to withdraw so that she may testify about a collateral matter,[8] Attorney Stafford can continue to represent Dore through the rest of the trial without necessitating a mistrial.[9]

---

[7]     In *Ramchair*, in the middle of the defendant's third trial, the prosecution unexpectedly asked a detective about whether the defense attorney had objected to the line-up used to identify the defendant. 601 F.3d at 69. The defense attorney objected but was overruled, and the testimony was admitted. *Id.* at 69-70. The trial judge denied defense counsel's requests to testify about the lineup and then for a mistrial. *Id.* at 70.

[8]     *But see* DR 5-102(a)(4) (allowing an attorney to "act as an advocate and also testify . . . if disqualification as an advocate would work a substantial hardship on the client because of the distinctive value of the lawyer as counsel in the particular case").

[9]     Indeed, even if Attorney Fontier and Attorney Stafford worked at the same firm – which they do not – the Disciplinary Rules would allow such a substitution. *See Tisby* v. *Buffalo Gen. Hosp.*, 157 F.R.D. 157, 166 (W.D.N.Y. 1994) ("The New York disciplinary rule, therefore, does not require automatic disqualification

**III.     Conclusion**

For the reasons stated above, the Motion should be denied in its entirety.

Dated:  New York, New York
        March 12, 2013

                                                Respectfully submitted,

                                                PREET BHARARA
                                                United States Attorney

                              By:     _____
                                                AMY LESTER
                                                MICHAEL D. MAIMIN
                                                JESSICA A. MASELLA
                                                Assistant United States Attorneys
                                                (212) 637-2416/2238/2288

---

of the attorney's law firm, but only that the attorney-witness not continue as an advocate in the matter.").