1970

D3JTDOR1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          12 CR 45 (RJS)

5   JERMAINE DORE and DWAYNE
    BARRETT,
6
                   Defendants.
7
    ------------------------------x
8

9                                      March 19, 2013
                                       9:30 a.m.
10

11  Before:

12                    HON. RICHARD J. SULLIVAN,

13                                       District Judge

14
                         APPEARANCES
15
    PREET BHARARA
16       United States Attorney for the
         Southern District of New York
17  BY:  JESSICA MASELLA
         AMY LESTER
18       Assistant United States Attorneys

19  ALICE L. FONTIER
         Attorney for Defendant Dore
20       -and-
    LAW OFFICES OF YING STAFFORD
21  BY:  YING STAFFORD

22  HURWITZ, STAMPUR & ROTH
         Attorneys for Defendant Barrett
23  BY:  JAMES M. ROTH
         -and-
24  SIMON & PARTNERS, LLP
    BY:  KENNETH C. MURPHY
25

D3JTDOR1

1              (In open court, jury not present)

2              THE COURT:  Let's go on the record since we have the

3       court reporter here.

4              This morning I received a note from the jury at 9:25,

5       signed by the foreperson, it says simply:  All members of the

6       jury are here.

7              So I marked that as Court Exhibit 3.  I then sent in a

8       note which I marked as Court Exhibit 4, it was a minute later,

9       9:26, saying:  Good morning, you may resume your deliberations.

10             So that went in along with the binders that includes

11      the indictment, the charge, the exhibit list, witness list, and

12      verdict form.

13             So that's what the jury has.  My expectation is that

14      we could be getting notes about specific exhibits or testimony

15      shortly, so I would say everybody should stick around for

16      probably for the next hour or so and see what we get.  If we

17      don't get anything, then it's OK to go to the attorney lounge

18      or the government has its own office on the fifth floor, make

19      sure we have numbers that we can reach you, I guess cell phones

20      are the best in case you wandered from a land line phone.

21             Anything else we should cover today?

22             MS. MASELLA:  No, your Honor.

23             MS. FONTIER:  I don't have anything.

24             MR. ROTH:  No, thank you.

25             THE COURT:  So I will be in the robing room.  I may

1972

D3JTDOR1

```
1    pop out here because my computer is out here, but otherwise
2    I'll be around.  I won't go across the street, or I will let
3    you know.
4              (Recess taken)
5              THE COURT:  We have a note from the jury, I'll mark it
6    as Court Exhibit 5, the time is 11:25, that's the date and the
7    time on the exhibit, signed by the foreperson.
8              It indicates, I'm quoting, the jury requests:
9              1.  Government Exhibit 30
10             2.  Government Exhibit 31
11             3.  Government Exhibit 72A
12             4.  Government Exhibit 73A
13             5.  Government Exhibit 73B
14             6.  Government Exhibit 82A
15             7.  Government Exhibit 83A
16             8.  Government Exhibit 87A
17             9.  Government Exhibits 201 to 265
18             10.  Government Exhibit 267
19             11.  Government Exhibit 268
20             12.  Government Exhibits 269 through 272
21             13.  Government Exhibit 500
22             14.  Government Exhibit 505
23             15.  Government Exhibit 527
24             16.  Government Exhibit 528
25             17.  Government Exhibit 1608
```

D3JTDOR1

```
 1              18.  Government Exhibit 2010

 2              19.  Government Exhibit 2020

 3              20.  Government Exhibit 2051.

 4         And those last three are all bracketed with a notation

 5    that says from December 1st to December 31st, 2001.

 6              21.  Government Exhibit 3001 to 3008

 7              22.  Government Exhibit 3537D

 8              23.  Government Exhibit 3539B

 9              24.  Defense A Exhibit

10         Signed by the foreperson.

11         So most of those we can collect together?  2010 and

12    2020 and 2051, those are the really voluminous ones, is that

13    right or not?

14         MS. LESTER:  Your Honor, some of the others are

15    voluminous as well.  The exhibits with A after them are the

16    contents of cell phones.  Some of those are not that

17    voluminous, but some of them are and are currently on disk.  We

18    can print them out.  We can see how many pages it's going to

19    be.

20         THE COURT:  Well, let's do that.  I think that's part

21    of the problem of introducing all these things in evidence that

22    the jury never had a sense of how big they were or what they

23    were.  So let's try to print them out and see what it looks

24    like.

25         Defense Exhibit A was what, the bank records?
```

1          MS. FONTIER:  The bank records, so we're done.

2          Your Honor, we have no objection to just the ones that

3     are easily gathered, if it's photographs or things like that,

4     and sending in what the government has available so they

5     have --

6          THE COURT:  I don't mind doing that.  I will send a

7     note saying --

8          MS. FONTIER:  We would just get all the records and

9     everything together then.

10          THE COURT:  Here, I can give the note to you, this is

11     Court Exhibit 5, just give it back to me.

12          MS. MASELLA:  Your Honor, was the first item

13     government 30 or 32?

14          THE COURT:  30.

15          MS. MASELLA:  That is the DVD containing the rap

16     video, so they won't have way to play that in the jury room.

17          THE COURT:  So I guess we'll have to bring them out.

18     What I may be inclined to do is send them a note saying we

19     have -- I'm sending in the following, and then Government

20     Exhibit 30 is a video, and so I will have you come out to watch

21     the video.

22          If there are other things that will need to be seen

23     out here, we should identify what those are.  But I would be

24     more inclined to print out the exhibits that are voluminous,

25     because scrolling through them on the screen in court is

D3JTDOR1

1    probably not efficient.

2             MR. ROTH:  Judge, I think the wise course is gather

3    them all instead of piecemeal, so if they want to analyze them

4    in the context.

5             THE COURT:  I don't know how long it will take.

6             MR. ROTH:  The video we can bring them out and show.

7             THE COURT:  Let's see how long it takes to print out

8    the other stuff.  I don't know what the things are off the top

9    of my head looking at the numbers.

10             Do you need the note?

11             MS. FONTIER:  If I could see the note I would

12    appreciate it.

13             MS. MASELLA:  Also, your Honor, 1608 is also a video,

14    so two videos on the list of items.

15             THE COURT:  OK, so figure out the ones that are

16    videos, figure out the ones that are one or two pages and then

17    the voluminous ones, let's figure out what those are and start

18    printing them.

19             I thought you guys checked exhibit list.  We shouldn't

20    be putting things on the exhibit list that are not in evidence.

21    The exhibit list should be the exhibits, folks, I expect you to

22    do that.

23             DEPUTY CLERK:  223, 224, 225, 226 and 229 is out.

24             THE COURT:  What's not in?

25             DEPUTY CLERK:  223, 224, 225, 226 and 229.

D3JTDOR1

1    THE COURT:  Are not in.

2    (Pause)

3    THE COURT:  So how are we doing?

4    MS. FONTIER:  We're having a discussion, your Honor,

5    about the contents of the phones and things and what is the

6    best way to approach this.  They're estimating some of these,

7    if we were to print everything, would be 7,000 pages and

8    there's also videos and things of that nature on the phone.  So

9    we're trying to figure out the best way to do things.

10    THE COURT:  Those are things to think about when

11    you're introducing things into evidence.

12    MR. ROTH:  I thought about that on relevancy grounds,

13    because some of this stuff obviously has nothing to do with --

14    but that's not the issue now.

15    THE COURT:  Can they just have the phone, scroll

16    through it?  Is the phone one of the exhibits?

17    MR. ROTH:  If it's still able to be powered up or

18    anything.

19    MS. MASELLA:  I don't know if we have chargers for the

20    phones.

21    (Pause)

22    THE COURT:  So what are we doing?

23    MS. LESTER:  Your Honor, the government is trying to

24    see if it's possible to get a laptop to the jurors, if the

25    Court would be amenable.  The phone records we could print out

D3JTDOR1

1   the sections that the jurors asked for, but for things like the

2   videos or the contents of the other phones that are on CDs they

3   would be able to look at them themselves on the laptop.

4           THE COURT:  All right.  But where are we with the

5   other documents?  Are we collecting those?

6           MS. LESTER:  Yes, we have those.

7           THE COURT:  So which are the ones that we're holding

8   out on?

9           MS. LESTER:  It's 30, 31, 72A, 73A, 73B, 82A, 83A,

10  87A, 1608, 2010, 2020 and 2051.

11          THE COURT:  So all the others are collected?

12          MS. LESTER:  Yes.

13          THE COURT:  I'm inclined to send in what we have and

14  say we're in the process of collecting the other things, so

15  that at least they can look at some of this stuff now.

16          Does anybody have any objection that?

17          MS. MASELLA:  No objection, your Honor.

18          MR. ROTH:  Judge, again, I just I would think it's

19  more orderly if they had it all and one person could compare

20  one piece of evidence that they don't have and/or they asked

21  for a piece that they now get.

22          THE COURT:  Well, they're going to get it.  I just

23  think otherwise they're going to do nothing until we figured

24  out what we're doing with these other huge documents.

25          MR. ROTH:  Or we could show them the videos, I

D3JTDOR1

1    suppose.

2         THE COURT:  I thought you were going to explore

3    whether we could send a laptop in that so that could watch it.

4         MR. ROTH:  That's true, too.

5         (Pause)

6         THE COURT:  I propose to send in the following note:

7    Enclosed are the following exhibits that you questioned,

8    Government Exhibit 2001 to 2022, 2027 to 2028, 2030 to 265,

9    267, 268, 269, 272, 500, 505, 527, 528, 3001 to 3008, 3537D,

10   and 3539B, and Defense Exhibit A.  We are in the process of

11   collecting the other exhibits you asked for, and will provide

12   them shortly.

13        So those are the exhibits, right?

14        MS. MASELLA:  Your Honor, the first series that you

15   read, you said 2000, those are 200.

16        THE COURT:  201 to 222.

17        MS. MASELLA:  OK, that's correct.  I thought I heard

18   thousand but --

19        THE COURT:  Maybe I misspoke.

20        MS. MASELLA:  Yes, that's what we have.

21        THE COURT:  OK.  So I will send that in and we have

22   the exhibits all together?

23        MS. MASELLA:  Yes, your Honor.

24        Your Honor, with respect to the other exhibits,

25   Ms. Brady is going to be able to obtain a laptop which does not

D3JTDOR1

| | |
|---|---|
| 1 | have any other material on the desktop, and we can send that |
| 2 | back to the jury with the CDs and the videos. |
| 3 | THE COURT:  I don't know if it's going to be easy to |
| 4 | use.  Are there any tricks to any of this?  I don't know, we |
| 5 | didn't really see some of these things, so I don't know what's |
| 6 | on the disks and whether they're easy to follow or not. |
| 7 | MS. MASELLA:  The phone records are in Excel |
| 8 | spreadsheets, although Ms. Lester is printing out those right |
| 9 | now, because they only asked for a selected date range.  So |
| 10 | those I think we should send back in a printed copy.  The |
| 11 | videos are pretty self-explanatory, I think they come up with a |
| 12 | little icon that you click, and I think they should be able to |
| 13 | figure it out. |
| 14 | THE COURT:  And the exhibits are clearly labeled one |
| 15 | video per disk?  I recall when Ms. Brady was putting them up |
| 16 | there were sometimes multiple videos on some of them. |
| 17 | MS. MASELLA:  There's one exhibit per disk, but one or |
| 18 | two of the videos have three or four segments of video. |
| 19 | THE COURT:  But they asked for just the exhibits, so |
| 20 | the exhibit will have segments of video and it will be clear |
| 21 | what they're looking at? |
| 22 | MS. MASELLA:  Yes, it will be clear, your Honor, in |
| 23 | the sense that it's all the same exhibit, and for some of those |
| 24 | exhibits we did look at two or three different segments so |
| 25 | they'll be able to view it. |

D3JTDOR1

1    THE COURT:  Let see when we get the laptop here we can

2    make sure that everybody agrees that what's going in is proper

3    and that you're sending in the laptop with the exhibits is the

4    right way to go, or whether there's some argument that we

5    should do it in a different way.

6    MR. ROTH:  That's what we were just discussing, Judge.

7    With respect to the phone records, I know that we have to have

8    to personally have a printout of 2020, which is about 400

9    pages, it's one set of call records.  It would be our belief

10   that the hard copy would be better as opposed to the jury being

11   able to perform various search functions on the Excel

12   spreadsheets, which might go beyond the range of the testimony

13   or implicate different facets of the evidence that went in.

14   THE COURT:  The printout for December 1st to

15   December 31st for those exhibits would be how long?  Do we

16   know?

17   MR. MURPHY:  I think it's probably 75 pages, actually.

18   I have a copy here of the call detail records, not of the --

19   MS. MASELLA:  Ms. Lester is downstairs now trying to

20   print out only the December 31st segment of those records.

21   THE COURT:  I would be inclined to not send in the

22   disk of 2010, 2020 and 2051, since they asked for a segment of

23   that.  But let's see what Ms. Lester -- what Ms. Lester and

24   Ms. Brady bring back.

25   MS. FONTIER:  Yes, that's my preference.

D3JTDOR1

1          (Pause)

2          THE COURT:  We have another note.

3          We have another note, I'll mark this as Court

4    Exhibit 7.  The time is 12:20.  It says the jury requests

5    portions of the testimony of Janiel Brown and Patrick Taylor

6    regarding December 12, 2011.  That's a little broad.

7          MR. ROTH:  That is.

8          (Pause)

9          MS. FONTIER:  Your Honor, am I remembering correctly

10   that you are providing a transcript back to them, we don't do a

11   readback here?

12         THE COURT:  That's right, so we'll have to redact

13   portions that either involve sidebars or other extraneous stuff

14   that's in there.

15         MS. FONTIER:  Thank you.

16         (Pause)

17         MS. MASELLA:  Your Honor, at this point we obtained a

18   laptop computer that is available to send back to the jury.  It

19   doesn't have any other information on it that they would be

20   able to access, and the defense has reviewed it and agreed it's

21   acceptable to send back.

22         THE COURT:  So we send back the laptop with Exhibits

23   30, 31, all the ones that are disks, is that right?

24         MR. MURPHY:  The exhibits that are videos, correct.

25         MS. MASELLA:  And also CDs which are the contents of

D3JTDOR1

1     cellular phones.

2             MR. MURPHY:  We just don't want to send back the

3     reports from the phone company.

4             THE COURT:  Right.  2010, 2020 and 2051 would be sent

5     back in hard copy because they're subsets of the actual

6     exhibit.

7             MS. MASELLA:  Correct.  And Ms. Lester is continuing

8     to work on those.

9             The only other thing I would note is there is a small

10    Post-it note on the laptop which contains the ID and password

11    that they will need to log onto the computer.  Every ten or

12    fifteen minutes or so, if they haven't used it, it will lock

13    them out and they have to log back on.

14            THE COURT:  So the ones that are covered with the

15    laptop will be 30, 31, 72A, 73A, 73B, 82A, 83A, 87A and 1608,

16    is that right?

17            MS. MASELLA:  Yes, your Honor.

18            THE COURT:  Password and user name or something?

19            MS. MASELLA:  Yes, your Honor, there's a Post-it note

20    taped to the top of the laptop.

21            (Pause)

22            THE COURT:  I have proposed to send in the following

23    note, which I will mark Court Exhibit 8, the time being 12:50:

24            I am sending you a laptop computer that will enable

25    you to review the following exhibits that you requested,

D3JTDOR1

1  Government Exhibits 30, 31, 72A, 73A, 73B, 82A, 83A, 87A and

2  1608.

3        In order to access the laptop, you should utilize the

4  password and user name that are located on the Post-it note

5  affixed to the laptop.  If you have any difficulty using the

6  laptop, let me know and I will respond with further directions.

7        MS. MASELLA:  And also Government Exhibit 505, which

8  is a video as well.  It was on their original list.

9        THE COURT:  OK, I have added 505.

10       How are we doing with 2010?

11       MS. MASELLA:  Your Honor, I printed those out.  I'm

12  letting defense counsel review them.

13       MR. MURPHY:  I'm looking at them now, your Honor.

14       THE COURT:  Let's send in the laptop with the other

15  exhibits.

16       Do you have the other exhibits?

17       MS. MASELLA:  Yes, your Honor.

18       (Pause)

19       THE COURT:  How are we doing on the transcript?

20       MS. FONTIER:  Soon.

21       MR. ROTH:  Are you ready yet?

22       Almost.

23       MR. ROTH:  We're ready to compare notes with them and

24  see where there's disagreement.  We have done Patrick Taylor, I

25  think we're waiting on Janiel Brown.

D3JTDOR1

1           MR. MURPHY:  And there's one issue on the cell phone

2      information, the records to go back, there's one disputed issue

3      we need to resolve.

4           THE COURT:  I thought we sent that stuff back.

5           I sent in a note saying those were the exhibits I was

6      sending in.  Did we send in those exhibits?

7           MS. LESTER:  That is what we sent in.

8           THE COURT:  What are you talking about, Mr. Murphy?

9           MR. MURPHY:  The call detail records.

10          THE COURT:  The printouts?

11          MR. MURPHY:  Yes.

12          THE COURT:  I thought you meant the contents of the

13     cell phone.

14          MS. FONTIER:  No, the cell phone records, there was

15     one -- we'll let them finish what they're doing, I guess,

16     Judge, it's a discrete issue.

17          THE COURT:  We have two lawyers, so one can listen.

18          MR. MURPHY:  On Exhibit 2020 there was a number of

19     documents.  The jury asked for in their note the relevant

20     documents from December 1 to December 31, 2011 from Exhibit

21     2020.  Ms. Lester printed up the call detail records for that

22     time period.  We have no problem with that.

23          But there's also a document on that disk called the

24     subscriber history that I believe covers that time period as

25     well.  It's a two-page document, essentially, and we would

D3JTDOR1

submit that that falls under the request as well, and just ask

that that be printed up and put in with the manila folder that

says Exhibit 2020.

            THE COURT:  OK.  And the government objects to that?

            MS. LESTER:  Your Honor, I said I only objected just

because I didn't print that out.  I didn't view that as

responsive to the jury's request, but we don't have any problem

with providing the subscriber information for all of the phones

to the extent that we have it.  It's on the exhibit.

            THE COURT:  Well, if there's no objection, then I

think subscriber information is probably relevant for that

one-month period, so that's fine.

            So those documents are then ready to go?

            MS. LESTER:  I have to go down and print out the

subscriber information.

            MR. ROTH:  Do you have a printer?  We just e-mailed it

to Aaron.

            MR. MURPHY:  It should be two or three pages.

            (Pause)

            MS. LESTER:  Your Honor, I think both parties have now

had a chance to review the transcripts, and we agree on most of

the designations.  There is just one disagreement with respect

to a portion of Patrick Taylor.

            THE COURT:  OK.  Well what day, first of all?

            MS. MASELLA:  Starting with Janiel Brown, she begins

D3JTDOR1

1    on December 6 -- March 6, sorry.

2              THE COURT:  OK.

3              MS. MASELLA:  Starting on page 326, line 8, and then

4    going all the way through 331, line 18, with redactions for any

5    objections.

6              THE COURT:  And nothing after line 18 on page 331?

7              MS. MASELLA:  Correct.

8              THE COURT:  OK.  Are there objections in there?

9              MS. MASELLA:  There are a few, your Honor.  Page 326,

10   for example.

11             THE COURT:  Right, at the very beginning.

12             MS. MASELLA:  We would redact the objection and the

13   Court's response.

14             THE COURT:  OK.  That's it, I think, right?

15             MS. MASELLA:  And that's the only portion from her

16   direct testimony.

17             THE COURT:  All right.  So then we go to cross.

18             MS. MASELLA:  Moving on to cross, also March 6, page

19   351, line 11, all the way through 357, line 17.

20             THE COURT:  OK.  There's some objections in those

21   coming out?

22             MS. MASELLA:  Those all come out, your Honor.

23             MS. FONTIER:  Your Honor, the note just referred to

24   December 12 as a day, not to either of the particular incidents

25   on December 12, correct?

D3JTDOR1

```
 1                THE COURT:  Testimony of Janiel Brown regarding
 2     December 12, 2011.
 3                MS. FONTIER:  Thank you, your Honor.
 4                MS. MASELLA:  The next portion begins also March 6,
 5     page 361, line 4, and going through 369, line 17.
 6                THE COURT:  361?
 7                MS. MASELLA:  361, line 4.
 8                THE COURT:  You said you looked at DNA reports in this
 9     case.  What does that have to do with December 12.
10                MS. MASELLA:  Well, if you look toward the bottom of
11     the page, all of this is being asked in connection with
12     December 12.
13                THE COURT:  Well, that seems to be a stretch to me.
14     She didn't look at any DNA reports on December 12.
15                MS. FONTIER:  The DNA reports are in relation to the
16     homicide, which was December 12.
17                THE COURT:  All right.  But that's not what it says.
18                Could I have the note again.
19                Portions of the testimony of Janiel Brown regarding
20     December 12.  DNA doesn't have anything to do with December 12
21     it just doesn't.
22                MS. FONTIER:  Your Honor, it's in the context of what
23     she looked at in regards to coming to me with the alibi.  So
24     it's about December 12.  The questions relate to what she
25     reviewed before she came to me.
```

D3JTDOR1

1          THE COURT:  But she didn't come to you on December 12.

2          MS. FONTIER:  But it's the testimony about what

3     happened on December 12.

4          THE COURT:  She didn't look at any DNA or pictures on

5     December 12.  It didn't ask for all the impeachment that was

6     introduced against her.  I don't see how that has anything to

7     do with December 12.

8          MS. FONTIER:  Your Honor, we would ask then that this

9     portion begin at 361, line 15, because that's the reports about

10    the homicide that she's reviewing.

11         THE COURT:  361, line 15?

12         MS. FONTIER:  Yes.

13         THE COURT:  Where Ms. Stafford says:  Purely for

14    identification?

15         MS. FONTIER:  Or line 17, if that's preferable.  Then

16    it doesn't make much sense:  Do you recognize that report?

17         The context, it provides context for the questions

18    that are coming up, so our request was --

19         THE COURT:  This is all about conversations that you

20    had with her.

21         MS. FONTIER:  About December 12.

22         THE COURT:  But no, they have asked for testimony

23    about that relates to December 12.  They're not asking about

24    testimony about your conversations with her about an alibi.

25         MS. FONTIER:  This is her testimony regarding

D3JTDOR1

1    December 12 about what she said about it, what she said to me.

2              THE COURT:  This is her testimony about what she said

3    to you, it's not about what happened on December 12.

4              MS. FONTIER:  But she's talking to me -- I mean I just

5    come back to the point she's talking to me about December 12,

6    so I think it's responsive.  I also note that the government

7    was not objecting to these.

8              THE COURT:  I can leave then, I guess, I didn't know.

9              MS. FONTIER:  Sorry, your Honor, I'm just noting it.

10             THE COURT:  But the jury has asked for something.  If

11   you folks want to shuttle in extraneous stuff, that's great,

12   but I don't have to be a party to it, and I have a role to

13   play.  So they didn't ask for what happened in February and

14   March in your office.  If they wanted to, they could get it.

15   If they want it, I'll give it to them, but that's not what they

16   asked for.

17             Page range was 361 to what?

18             MS. MASELLA:  Your Honor, I think the confusion -- if

19   you look at the bottom of 361, line 25.

20             THE COURT:  I'm just asking for the page number.

21             MS. MASELLA:  361, I guess line 17 now, through 369,

22   line 17.

23             THE COURT:  369 what line?

24             MS. MASELLA:  Line 17.

25             THE COURT:  What are the other portions?

D3JTDOR1

1       MS. MASELLA:  There's only one other, which is on the

2  next day, it's on March 7, beginning on page 520, line 2

3  through 521, line 2.

4       THE COURT:  Why is line 2 up through line 18

5  responsive to this request?  You were not a happy participant.

6  He never forced you to do any of these things, never physically

7  dragged you into a car.  What does that have to do with

8  December 12?

9       MS. FONTIER:  What page?

10      THE COURT:  Line 2.

11      MS. FONTIER:  Your Honor, the only reason that we had

12  gone that far is because it gives -- just to give the context

13  of what that text message is in response to.  Because it's a

14  series of questions leading up to the text message about

15  December 12.  So that was the only reason that that was

16  included.  We can include just the text message portion about

17  December 12 if your Honor prefers.

18      THE COURT:  I don't see how lines 5 through 9 have

19  anything to do with anything.  Then Mr. Murphy asked the

20  question:  Take a look at this -- without identifying what the

21  "this" is -- and then ultimately there's a discussion about the

22  zoom.  I'm going to read it into the record because we went

23  over it, we went over it yesterday, and then I guess what

24  follows at line 18 is a quote -- well, he's quoting from an

25  exhibit that is not referred to specifically, right?  This is

D3JTDOR1

1       the text message?

2                       MS. FONTIER:  Correct.

3                       THE COURT:  From where to where?  520 to where?

4                       MS. MASELLA:  Your Honor, initially defense requested

5       520, line 2, but I believe everyone is now in agreement we

6       could start 520, line 18, through 521, line 2.

7                       THE COURT:  521, line 2.  All right.

8                       MS. FONTIER:  Yes, that's acceptable, your Honor.

9                       THE COURT:  OK.  That's it then for Ms. Brown?

10                      MS. FONTIER:  Yes, your Honor.

11                      THE COURT:  It seems to me that most of what's the

12      cross material is really about prior statements, out-of-court

13      statements made to Ms. Fontier concerning an alibi, but they're

14      not really about December 12, they're about an alibi which is

15      he was with me on December 12.  What page again?

16                      MS. MASELLA:  I think the only one left open is the

17      one that begins at page 361 at line 17.

18                      THE COURT:  What is Exhibit D?  Was it admitted?

19                      MS. MASELLA:  It's not in evidence.

20                      MS. FONTIER:  No, your Honor, it was a copy of the

21      police reports that were sent to her in discovery and were

22      marked for identification but then were never admitted, or I

23      don't know if they were properly -- they were only marked for

24      identification, your Honor.

25                      THE COURT:  I don't think any of this has to do with

D3JTDOR1

1    December 12, it has to do with inconsistent statements that

2    were made well after December 12.  Whether or not an

3    investigator went out I don't think is regarding December 12,

4    2011, her testimony regarding December 12, 2011.

5          MS. FONTIER:  Your Honor, so the record is clear, I

6    would say it's our position that the alibi that she's

7    discussing in this portions that we requested is about

8    December 12, so we believe it is responsive.

9          THE COURT:  But most of this questioning is not even

10   about the alibi, it's about whether she got certain discovery.

11   It's impeachment.

12         MS. FONTIER:  All of that discovery is related to

13   December 12, that's why we requested it, and we continue to

14   request it.  But obviously I don't need to -- we argued the

15   point, but just so the record is clear.

16         THE COURT:  The parties agree 361, line 17?

17         MS. MASELLA:  17.

18         THE COURT:  To where?

19         MS. MASELLA:  369, line 17.

20         THE COURT:  I really do think that's a stretch.  A

21   fair reading of this note is that they want to know what Brown

22   and Taylor had to say about the events of December 12.  Most of

23   what is on 361 to 369 is about conversations and communications

24   that Brown had with Ms. Fontier well after December 12.

25   There's a couple of portions of that testimony that relate

D3JTDOR1

1     specifically to December 12, referring to 365, line 12 to 14.

2              I think this is more than what they asked for.  There

3     are disputes with respect to Mr. Taylor?

4              MR. ROTH:  Only one area, Judge.

5              THE COURT:  Let's look at that.

6              What date?

7              MR. ROTH:  It's March 12.

8              MS. MASELLA:  March 12, your Honor, beginning on page

9     1058.

10             MR. ROTH:  Line 22.  This is the undisputed, Judge.

11             MS. MASELLA:  Line 22.

12             MR. ROTH:  To 1059, line 9.

13             MS. MASELLA:  1058, 22, through 1059, line 8.

14             THE COURT:  OK.  And there's a dispute about

15    something?

16             MS. MASELLA:  That's all that the government wants to

17    include.  Mr. Roth has an additional request.

18             MR. ROTH:  Yes, Judge, I think that those portions of

19    the direct obviously talk about what is purported to be

20    somewhat of an admission by Mr. Barrett at some unspecified

21    time, and I think to put that in context, starting at 1129,

22    line 8, to 1130, line 25, discusses when they were discussing

23    the robberies, which the homicide was a robbery homicide on

24    December 12, the nature of their discussions, and the

25    reliability of the so-called admission by Mr. Barrett.

                                                                    1994
D3JTDOR1

 1            THE COURT:  OK, but they didn't ask for that.  When

 2   you made this point in your summation, it's a point that was

 3   worth making.  I have no doubt the jury understood what you

 4   were talking about, but I don't think that's what they asked

 5   for here.

 6            MR. ROTH:  He's clearly talking about --

 7            THE COURT:  December 12.

 8            MS. FONTIER:  It's subsumed in there for sure, the

 9   robberies.  It's all robberies, it's generic.  It's a robbery

10   carjacking on the 12th.  On the 12th there's two robberies that

11   are alleged.

12            THE COURT:  You're talking about page 11 what?

13            MR. ROTH:  1129 when he's talking in the context of

14   talking to Tall Man and he says --

15            THE COURT:  Line 8?

16            MR. ROTH:  Picking up at line 8, and then that's just

17   in the context of line 18 when he answers on line 22 only

18   robberies we were talking about.  And that's when Tall Man in

19   that group at one of these conversations made these so-called

20   statements that the government characterizes as admissions in

21   the direct portion of the testimony that we gave the jury.

22            THE COURT:  That's not about the 12th, so I'm going to

23   sustain the government's objection to that.  That's not going

24   back, so just the first part of that.  Is there no other part

25   where he talked about it?

D3JTDOR1

```
 1              MS. MASELLA:  That's all, your Honor.

 2              MR. ROTH:  No.

 3              THE COURT:  I see the problem with the Brown testimony

 4    just because yes, this is a lot of conversation about her alibi

 5    for Mr. Dore on the 12th, but there is so much extraneous stuff

 6    that isn't really about the 12th at all, it's about impeaching

 7    her with what she knew or didn't know at the time she was

 8    having conversations with Ms. Fontier in January, February,

 9    March, April of 2012.

10              Tell me where it starts again.

11              MS. MASELLA:  There is a portion that are starts on

12    351, line 11, to 357, line 17.

13              THE COURT:  I think it's because so hard to surgically

14    remove it, and since no one else is objecting, I guess I will

15    allow it, but I think this is beyond what they asked for.  So

16    351, line 14 --

17              MS. MASELLA:  Line 11.

18              THE COURT:  Line 11.

19              MS. MASELLA:  Through 357, line 17.  Then there's the

20    second portion which we are discussing which begins on 361.

21              THE COURT:  That's part I was more interested in.

22              MS. MASELLA:  The next one is 361, line 17 through

23    369, line 17.

24              THE COURT:  I'll allow it.  There's a lot of

25    objections and a lot of sustained objections, so you're going
```

D3JTDOR1

 1    to redact all that out?

 2                MS. MASELLA:  Yes, your Honor.

 3                THE COURT:  I want to see the redacted versions before

 4    it goes in.

 5                MS. MASELLA:  They should be ready shortly, your

 6    Honor.

 7                THE COURT:  And so no other testimony with respect to

 8    this note?

 9                MS. MASELLA:  No, your Honor.

10                THE COURT:  How long do you think it will take to

11    gather that stuff?

12                MS. MASELLA:  Probably only ten to fifteen minutes,

13    your Honor.  Ms. Brady has already completed some of the

14    portions.

15                How many copies did you want to send back?

16                THE COURT:  I generally send one for the jury, and

17    then they can read it aloud.

18                MR. MURPHY:  We resolved the issue on the call detail

19    reports, do you want to send them back?

20                THE COURT:  What's the issue on the call?

21                MR. MURPHY:  The subscriber information.

22                THE COURT:  So you should hand that -- it has the

23    exhibit numbers on it?

24                MS. MASELLA:  This does, they each have their own

25    folder.

D3JTDOR1

1          THE COURT:  I don't think that I need to do a note, I
2     think the exhibit numbers are self explanatory.
3          All right.  Have the defendants eaten?  Have you had
4     lunch?
5          MR. ROTH:  No.
6          THE COURT:  Not just counsel, the defendants.
7          DEFENDANT BARRETT:  May I have a decent lunch today?
8          THE COURT:  I don't know.
9          Marshals, can we get those guys lunch downstairs?
10          What we're going to do is gather the things we have
11     been talking with and send them in.  If there's any more notes,
12     we'll bring you back up, but otherwise you should eat lunch.
13          And counsel hasn't eaten either, I guess, right?
14          MS. MASELLA:  No, your Honor.
15          THE COURT:  So once we have collected all the
16     transcripts then I guess you guys can get something to eat and
17     I will tell the jury if there are any notes we'll be done
18     shortly.
19          MS. MASELLA:  Thank you, your Honor.
20          (Luncheon recess taken)
21          THE COURT:  There are two jury notes that I want to
22     put on the record, the first which was Court Exhibit 9, came in
23     at 2:40, it said simply:  The jury requests Government
24     Exhibits 501 and Government Exhibit 502.
25          I discussed that with the parties and the exhibits

D3JTDOR1

1     were sent in shortly after that.

2              I have now received what has been marked as Court

3     Exhibit 10, it's a note of today's date, the time, 4:07 p.m.,

4     and it says simply:  The jury has reached a verdict.

5              And it is signed by the foreperson, as is the prior

6     Court Exhibit 9.

7              So what I propose to do is bring in the jury, we'll

8     take the verdict, the foreperson will hand the verdict form to

9     my law clerk, he'll hand it to me to make sure it's in order,

10    and assuming it is, I will give it back to the foreperson, and

11    then Mr. Halegua will ask the questions for each of the counts

12    and each of the defendants.  And we'll take the verdict from

13    the foreperson, and depending on what it is, I will see what we

14    have to do after that.

15             I will thank the jury for their service and send them

16    back to the jury room, and I will meet with them and convey my

17    own thanks personally.  I will ask them if they want to talk to

18    any of the lawyers, should any lawyers want to talk to them.

19    Once we know the verdict, it may be more whether you want to

20    talk to the jury, depending on what the verdict is.

21             Once I send the jury back to the jury room, we'll

22    follow up with either a sentencing date and post-trial briefs,

23    or if it's an acquittal, we'll settle up with what we need to

24    do to make sure the defendants are then released.

25             So this is a stressful part of the process, it's

D3JTDOR1

probably the most stressful for Mr. Dore and Mr. Barrett, I'm
sensitive to that, I understand that.  It's stressful for
lawyers too, because a trial is a very stressful thing, and it
can become a personal thing, so I understand all that.  Let me
just ask everybody to keep emotions in check while the jury is
here, whatever the verdict, and then we could talk about next
steps after that.

OK.  Anything else on anyone's mind?

MS. FONTIER:  Does your Honor wish for Mr. Dore to
stand while the verdict is read?

THE COURT:  I don't usually have the defendants stand,
unless someone has a preference otherwise.

MS. FONTIER:  No, your Honor.

THE COURT:  So let's bring in the jury then.

(Jury present)

THE COURT:  Mr. Plavsic, I received your note, you
indicated that you had reached a verdict.

Do you have the verdict form?

THE FOREPERSON:  Yes.

THE COURT:  Could you hand it to Mr. Halegua.

I'm going to hand it back to you, Mr. Plavsic, and
then Mr. Halegua will ask you for each count, each defendant
what your verdict is.  So collect your things and then you can
stand.

Mr. Halegua, take the verdict.

D3JTDOR1

1              LAW CLERK:  Mr. Foreperson, on Count One, conspiracy

2    to commit robbery, how do you find the defendant Jermaine Dore?

3              THE FOREPERSON:  Guilty.

4              LAW CLERK:  On Count One, conspiracy to commit

5    robbery, how do you find the defendant Dwayne Barrett?

6              THE FOREPERSON:  Guilty.

7              LAW CLERK:  On count two, possession and use of

8    firearm in connection with the robbery conspiracy, how do you

9    find the defendant Jermaine Dore?

10             THE FOREPERSON:  Guilty.

11             LAW CLERK:  On Count Two, how do you find the

12   defendant, Dwayne Barrett?

13             THE FOREPERSON:  Guilty.

14             LAW CLERK:  On count three, the robbery on October 29,

15   2011, how do you find the defendant Jermaine Dore?

16             THE FOREPERSON:  Guilty.

17             LAW CLERK:  On Count Three, how do you find the

18   defendant Dwayne Barrett?

19             THE FOREPERSON:  Guilty.

20             LAW CLERK:  Count Four, possession and use of a

21   firearm in connection with the October 29, 2011 robbery, how do

22   you find the defendant Jermaine Dore?

23             THE FOREPERSON:  Guilty.

24             LAW CLERK:  On Count Four, how do you find the

25   defendant Dwayne Barrett?

D3JTDOR1

1           THE FOREPERSON:  Guilty.

2           LAW CLERK:  On Count Five, robbery on December 12,

3    2011, how do you find the defendant Jermaine Dore?

4           THE FOREPERSON:  Guilty.

5           LAW CLERK:  On count five, how do you find the

6    defendant Dwayne Barrett?

7           THE FOREPERSON:  Guilty.

8           LAW CLERK:  Count Six, possession and use of a firearm

9    in connection with the December 12, 2011 robbery, how do you

10   find the defendant Jermaine Dore.

11          THE FOREPERSON:  Guilty.

12          LAW CLERK:  How do you find the defendant Dwayne

13   Barrett?

14          THE FOREPERSON:  Guilty.

15          LAW CLERK:  Count Seven, murder in connection with the

16   December 12, 2011 robbery, how do you find the defendant

17   Jermaine Dore?

18          THE FOREPERSON:  Guilty.

19          LAW CLERK:  How do you find the defendant Dwayne

20   Barrett on Count Seven?

21          THE FOREPERSON:  Guilty.

22          THE COURT:  Thank you, Mr. Plavsic, you may sit down.

23          Let's poll the jury.

24          LAW CLERK:  Juror number one, you found both

25   defendants guilty on all counts one through seven, is that your

D3JTDOR1

1    verdict?

2              THE JUROR:  Yes.

3              (Jury polled, all answered in the affirmative)

4              LAW CLERK:  Jury has been polled, your Honor.

5              THE COURT:  Thank you.

6              All right, ladies and gentlemen, that concludes your

7    jury service.  It's been a little over two weeks, so it went a

8    little faster than we anticipated, but that's not to say this

9    wasn't real service on your part.  Jury service is public

10   service.  I told that you at the beginning, and I meant it.

11   And I was certainly impressed with how serious you took your

12   work, how carefully you paid attention to all the witnesses

13   throughout the trial, how serious you were about the

14   deliberation process from the notes I received from you, from

15   the evidence that you asked for and reviewed.  So you certainly

16   have my thanks and the thanks of all the parties.  It's a hard

17   thing to be a juror, but you should be proud of the service you

18   performed.  I certainly am grateful for it, and I know I speak

19   for the entire court system when I say that.

20             What I would like you to do is go back to the jury

21   room and wait a few minutes.  I would like to convey my thanks

22   personally.  So don't leave yet, but this concludes your jury

23   service.  So we will stand one last time as you leave the

24   courtroom.

25             All rise for the jury.

D3JTDOR1

1          (Jury not present)

2          THE COURT:  OK.  Have a seat.

3          What we should discuss now, I guess, is a date for

4    post-trial briefing, if there is to be any post-trial motions,

5    and then also a sentencing date.  So I reserved on Rule 29

6    motions with respect to the conspiracy count, and I will

7    continue to do that.

8          Is anyone planning to make a post-trial motion?

9          MS. FONTIER:  I would like to expand the time, your

10   Honor, so that I could do a better review of the record and

11   make a determination on that.

12         THE COURT:  OK.  Is 30 days you think sufficient?

13         MR. ROTH:  30 days is fine.

14         MS. FONTIER:  30 days is fine.

15         THE COURT:  30 days from today is April 22nd.

16         All right.  For a sentencing date, I would normally

17   schedule sentencing out about four or five months or so.  Four

18   months puts us at basically the end of July, five months the

19   end of August.  So I don't know if you have a preference,

20   counsel, I don't know what your schedules are.

21         MR. ROTH:  I think July.

22         MS. FONTIER:  I have a trial starting in the middle of

23   August, so if we could do the end of July, that would be fine.

24         THE COURT:  All right.  July 26, at -- we'll do

25   Mr. Dore in the morning at 10 and we can do Mr. Barrett in the

D3JTDOR1

1    afternoon at 2:30.

2              MR. MURPHY:  Sorry, your Honor, did you say the 26th?

3              THE COURT:  July 26th, yes.

4              MS. FONTIER:  Thank you, your Honor.

5              THE COURT:  Mr. Dore and Mr. Barrett, let me tell you

6    briefly how sentencing works.  What I will happen between now

7    and the sentencing date is the probation department will issue

8    a presentence report or PSR.  That will have a lot of

9    information that I will look to as I decide the appropriate

10   sentence.  Those reports can often be 20 or 30 pages long,

11   single spaced.  It will have a lot of information about the

12   crimes charged, but also about you individually, your lives,

13   because the sentence I impose has to be tailored to you as

14   individuals.

15             So in order to get that information, the probation

16   department interviews a lot of people, perhaps teachers,

17   co-workers, family members, but also yourselves.  So I would

18   ask that you be truthful and cooperative with the probation

19   officer when they come to interview you.

20             I assume counsel want to be present for any interview.

21             MS. FONTIER:  Certainly, your Honor.

22             MR. ROTH:  Of course.

23             THE COURT:  So I direct that no interview shall take

24   place unless the attorneys are present.

25             Once the report is completed, or a draft is completed,

D3JTDOR1

1    the draft will be sent to each of you and to each of your

2    lawyers.  You should review those.  If there are errors or

3    things that you disagree with, you can discuss that with your

4    lawyers, they can convey those proposed changes or alterations

5    to the probation officer.  The probation officer will then

6    issue a final report, which I will get a copy of, so will you.

7    Take a look at that as well.  If there are still portions of it

8    with which you disagree, talk to your lawyers, and your lawyers

9    can then lodge formal objections.

10          In addition to the presentence report, I will review

11   any submissions made by your lawyers, or you your yourselves,

12   or friends or family members.  So if there are people that

13   would like to write letters to the Court, that's perfectly

14   fine.  I would be happy to read them.  They can be very

15   helpful.  What I would ask simply is that if you have anyone

16   who wants to write a letter to me, send those letters to your

17   lawyers, your lawyers will then collect them and submit them

18   together with their sentencing submission, so I get everything

19   all at once.  That's the best way to ensure that nothing slips

20   through the cracks.  I promise you I will read them all.  I

21   take sentencing very seriously, and I will definitely take the

22   time to read all the sentencing submissions.

23          On the day of sentencing we will review the resentence

24   report.  If there are objections, I'll resolve the objections,

25   I will resolve the factual disputes.  I then will make a

D3JTDOR1

| 1 | sentencing guidelines calculation under the federal sentencing |

1   sentencing guidelines calculation under the federal sentencing

2   guidelines.  I will then hear from the lawyers, allow them to

3   make any arguments and specify any facts that they think are

4   relevant for sentencing.  I will hear from the government as

5   well.  And finally, I would be happy to hear from you if you

6   would like to speak.  You are not required to, but you have a

7   right to and would be welcome to.

8           At that point I will state the sentence that I intend

9   to impose, give my reasons for it, and then if there's no legal

10  bar to my imposing that sentence, then I will formally impose

11  sentence.

12          So that's how it will work.  That's what will happen

13  between now and July 26th.

14          All right.  Let me ask the lawyers, do any of you wish

15  to speak with the jurors should they be inclined to meet with

16  you afterwards?

17          MR. ROTH:  I'll speak to them, Judge.

18          MS. FONTIER:  I'm not opposed to it if they want to.

19          THE COURT:  They often don't.  I will ask them, but I

20  just -- if none of you wanted to then I wouldn't ask, but I

21  will ask.  If you wait here I will chat with them.  I don't get

22  into the substance of their deliberations or the substance of

23  the case, it really is just to thank them and to ask them

24  generally if there's anything that we could do to make the

25  experience better.  So it will be that type of question that we

D3JTDOR1

1    discuss.

2              OK.  Let me thank all of you.  As I said, this part of

3    the trial is always difficult for those who got a verdict that

4    was disappointing, but I do want to commend all the lawyers for

5    the effort that they put into this.  It was a pleasure for me

6    to preside over a trial that's well tried.  So thanks for that.

7              OK.  Let me thank the court reporters for their work

8    throughout the trial as well.  Thanks.

9              (Trial concluded)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25