UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

No. 12 Cr. 45 (RJS)
_____

UNITED STATES OF AMERICA

VERSUS

JERMAINE DORE AND DWAYNE BARRETT,

Defendants.
_____

MEMORANDUM AND ORDER
July 31, 2013
_____

RICHARD J. SULLIVAN, District Judge:

On March 19, 2013, a jury found Defendants Jermaine Dore ("Dore") and Dwayne Barrett ("Barrett" and, with Dore, "Defendants") guilty on all seven Counts of Indictment S2 12 Cr. 45. Now before the Court are Dore and Barrett's motions pursuant to Rule 29 and Rule 33 of the Federal Rules of Criminal Procedure. For the reasons stated below, the Court denies each of these motions.

I. BACKGROUND[1]

On January 18, 2012, the government filed an Indictment charging two Counts – one for conspiring to commit Hobbs Act robberies and another for using and carrying firearms in furtherance of that conspiracy – against five individuals: Fahd Hussain ("Hussain"), Taijay Todd ("Todd"), Tameshwar Singh ("Singh"), Dore and Barrett. (Doc. No. 1.) On April 23, 2012, Dore and Barrett each filed a motion to suppress certain evidence, alleging that it was seized pursuant to an unlawful search. (Doc. Nos. 28, 33.) The Court held a suppression hearing on these motions on May 29, 2012, at which several witnesses testified for the government and Janiel Brown ("Brown"), Dore's former girlfriend, testified for Defendants. (*See* Doc. No. 49.) In a decision dated June 26, 2012, the Court denied both motions. (*Id.*)

On June 25, 2012, the government filed a Superseding Indictment (S1 12 Cr. 45), which included the same five Defendants but charged seven Counts instead of two.

---

[1] In deciding the present motions, the Court considered Barrett's Memorandum of Law (Doc. No. 192) ("Barrett Mem."), Dore's Memorandum of Law (Doc. No. 195) ("Dore Mem."), the government's Memorandum of Law in Opposition (Doc. No. 199) ("Opp'n Mem."), and all exhibits and declarations attached thereto, as well as the testimony and exhibits introduced at trial.

(Doc. No. 48.) Dore and Barrett were implicated in all seven Counts: (1) conspiring to commit Hobbs Act robberies from in or about 2010 to January 2012; (2) using and carrying firearms in furtherance of the conspiracy charged in Count One; (3) committing a Hobbs Act robbery on or about October 29, 2011, and aiding and abetting the same; (4) using and carrying firearms in furtherance of the robbery charged in Count Three; (5) committing a Hobbs Act robbery on or about December 12, 2011, and aiding and abetting the same; (6) using and carrying firearms in furtherance of the robbery charged in Count Five, which firearms were discharged, and aiding and abetting the same; and (7) using and carrying firearms in furtherance of the robbery charged in Count Five, and in the course of that crime, causing the death of a person through the use of a firearm, and aiding and abetting the same. (*Id.*)

Prior to trial, several Defendants, including Dore and Barrett, filed motions *in limine* (Doc. Nos. 116 (Barrett), 117 (Todd), 120 (Dore), 126 (Singh)), including, *inter alia*, a request that the government be precluded from introducing a music video that depicts Todd, Barrett, and a third, unindicted individual acting out an armed robbery. (Doc. No. 117.) Once the motion was fully briefed, the Court heard oral argument on February 27, 2013. The Court denied the motion at that hearing.[2] (Motions *In Limine* Hr'g Tr. 31:25–33:4, Feb. 27, 2013 ("Feb. 27 Tr.").)

While the motions *in limine* were pending, the government filed another Superseding Indictment (S2 12 Cr. 45) (the "Second Superseding Indictment") on February 19, 2013, which added Defendant Shea Douglas ("Douglas") to the original five Defendants, but contained the same seven counts. (Doc. No. 141.)

Dore and Barrett's trial commenced on March 4, 2013.[3] During the trial, which lasted ten days, the government called more than forty witnesses and provided evidence of ten robberies that were part of the alleged conspiracy. (Opp'n Mem. at 3–7.) The evidence included, *inter alia*, the testimony of law enforcement officers, victims, and cooperating witnesses; the testimony of a ballistics expert; cell-site evidence based on calls made from Defendants' phones; and text messages sent by Defendants. Among the government's witnesses was Brown, who testified on March 6 and 7, 2013. (Trial Tr. 241–404, 491–544.) After Brown's testimony began, Dore's attorney, Alice Fontier ("Fontier"), moved to withdraw from the case so that she could testify to impeach Brown's testimony. The Court denied this request.[4] Nonetheless, Dore's other attorney, Ying Stafford, performed an extensive cross-examination of Brown. (*Id.* at 345–89.) Defendants only called a single witness – a paralegal to offer visual aids summarizing the cell-site data introduced by the government. (*Id.* at 1578–96, 1622–72).

After the government rested on March 13, 2013, Dore and Barrett made motions

---

[2] The Court's ruling on the video is discussed in more detail in the section on Barrett's Rule 33 motion, which alleges the Court erred in admitting the video at trial. *See infra* III(B)(2).

[3] Prior to the trial, Defendants Todd, Hussain, and Singh entered guilty pleas. Because Defendant Douglas was only indicted shortly before trial, at a conference on February 20, 2013, the Court severed his case from that of the other Defendants.

[4] Dore's motion and the Court's ruling are discussed in greater detail in the section on Dore's Rule 33 motion, which essentially argues that the Court erred in denying the motion for Fontier to withdraw as counsel in order to testify. *See infra* III(B)(1).

for judgments of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. (*Id.* at 1551:8–14.) The Court heard oral argument on these motions on March 14, 2013 (*id.* at 1716:18–1718:4), denying each Defendant's motion as to the conspiracy count (*i.e.*, Count One), but reserving judgment on the others (*id.* at 1718:5–9).

On March 19, 2013, the jury found Dore and Barrett guilty of all seven Counts of the Second Superseding Indictment. The Court then set a schedule for post-trial motions. Neither Dore nor Barrett provided any additional briefing or argument concerning his Rule 29 motion. However, Dore and Barrett each filed a motion for a new trial pursuant to Rule 33 of the Federal Rule of Criminal Procedure (Doc. Nos. 190, 193), which the government opposed on May 15, 2013 (Doc. No. 199).

The Court first considers the Rule 29 motions for Counts Two through Seven of the Second Superseding Indictment, and then considers Dore's and Barrett's Rule 33 motions.

## II.  RULE 29 MOTIONS

### A.  Legal Standard

Rule 29(a) requires the court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Cr. P. 29(a). Where the court reserves judgment until after the jury returns a verdict, it must still "decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Cr. P. 29(b). "A defendant challenging a conviction based on insufficient evidence bears a heavy burden." *United States v. Aina-Marshall*, 336 F.3d 167, 171 (2d Cir. 2003) (citation omitted). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In this analysis, the court does not assess witness credibility, resolve inconsistent testimony against the verdict, or otherwise weigh the significance of the evidence. *See United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000). Further, the court is to apply this test to "the totality of the government's case and not to each element, as each fact may gain color from others." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (internal citations omitted). "[T]he court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *Id.* (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982)).

### B.  Discussion

Having presided over the trial and carefully scrutinizing the record, the Court concludes that for Counts Two through Seven of the Second Superseding Indictment there was ample evidence from which a "rational trier of fact could have found the essential elements of [each of] the crime[s] beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Indeed, the testimony of the two cooperating witnesses, Brown and Patrick Taylor ("Taylor"), was itself sufficient to convict Dore and Barrett of the Counts in the Second Superseding Indictment. However, their testimony was also corroborated by victim testimony, cell-site evidence, video recordings, and other physical evidence. Based on "the totality of the government's case," viewed "in the light most favorable to the prosecution," the

3

Court has little difficulty concluding that the jury "found the essential elements of the crime[s] beyond a reasonable doubt." Accordingly, Dore's and Barrett's Rule 29 motions are denied.

### III. RULE 33 MOTIONS

Each Defendant also moves for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Dore essentially argues, as he did at trial, that Fontier should have been permitted to withdraw as counsel in order to testify to impeach Brown by demonstrating that her testimony at trial was inconsistent with statements previously made to Fontier during a meeting in her office. Dore also now argues that Brown's testimony constituted perjury, which provides grounds for a new trial. Barrett argues that the Court erred by denying the motion *in limine* to preclude the music video portraying a robbery, and therefore a new trial should be ordered. For the reasons set forth below, the Court denies both of these motions.

#### A. Legal Standard

Under Rule 33, a district court may, upon the defendant's motion, "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Cr. P. 33(a); *United States v. Davis*, No. S1 06 Cr. 911 (WHP), 2010 WL 3306172, at *4 (S.D.N.Y. Aug. 20, 2010). "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. The trial court must be satisfied that 'competent, satisfactory and sufficient evidence' in the record supports the jury verdict." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). To grant a Rule 33 motion, "[t]here must be a real concern that an innocent person may have been convicted." *Sanchez*, 969 F.2d at 1414.

#### B. Discussion

##### 1. Dore's Motion

Dore's motion for a new trial is based on two related claims. First, Dore contends that Brown "perjured herself" during the trial when she testified about "the events of the day on which the homicide occurred." (Dore Mem. at 4.) Second, Dore agues that the Court's decision during trial denying the motion for Fontier – "the only witness that could impeach Ms. Brown" – to withdraw from the case and offer testimony to impeach Brown further prejudiced him. (*Id.* at 2, 4.) Neither of these arguments is persuasive nor do they provide grounds for a new trial.

###### a. Perjury

Dore first argues that "[a] new trial is warranted here because" Brown's perjured testimony as to "the events of the day on which the homicide occurred . . . was central to the government's proof on the murder count" and, indeed, "only [Brown]'s testimony linked [Dore] directly to that offense." (Dore Mem. at 4.) Specifically, Dore alleges the following testimony was false: "In sum, Ms. Brown stated that when she met with counsel to inform counsel that Mr. Dore had an alibi for the December 12, 2011, homicide . . . she did not know the time at which the homicide took place. She stated that once she knew the time, the discussion of the alibi went no further." (*Id.* at 2.) Dore then relies on a Declaration submitted by Fontier to argue that "Ms.

4

Brown was well-aware of the time of the homicide prior to informing counsel that Mr. Dore had an alibi" and prior to the retention of an investigator to attempt to corroborate the alibi. (*Id.* at 2; *see also* Decl. of Alice L. Fontier, dated April 24, 2013, Doc. No. 194 ("Fontier Decl."), ¶¶ 7–15.)

At trial, Brown testified that when she presented Fontier with an alibi for Dore, she knew the date that the homicide occurred but not the time of day. (Trial Tr. 357:8–17, 361:23–363:13.) Consequently, she gave Fontier a receipt for an ATM transaction that occurred close to midnight on December 12, 2011, not realizing that the murder had occurred just before noon. (*Id.* at 361:23–363:13.) With respect to the investigator, Brown admitted that Fontier told her that an investigator would be hired to pursue the potential alibi; however, Brown stated that this occurred *after* Brown submitted the ATM receipt to Fontier but *before* Fontier informed Brown that the time of the receipt could not create an alibi for Dore. (*Id.* at 363:22–364:15.) By contrast, Fontier's Declaration states, essentially, that she had a meeting with Brown wherein they "discussed the time and date of the homicide" (Fontier Decl. ¶ 7), at which time Brown told her "that if the murder took place at noon on December 12, 2012, Mr. Dore could not have been the person that committed the murder, because he was with her in Co-Op City shopping and going to the bank at that date and time" (*id.* ¶ 8). Hence, there is a contradiction between Brown's testimony and Fontier's Declaration on the narrow factual issue of exactly when Brown learned the time of the murder.

The Second Circuit has explained that in considering motions for a new trial based on the allegation that perjured testimony was admitted at trial, "[p]erjury in and of itself is insufficient to justify relief under Rule 33." *United States v. Stewart*, 433 F.3d 273, 297 (2d Cir. 2006) (citation omitted). Instead, "when a trial has been tainted by false testimony," the Court must determine "whether false testimony was prejudicial in the sense that it affected the outcome of the trial," which is done by assessing "the materiality of the perjury to the verdict." *Id.* (citations omitted).

As a preliminary matter, the existence of a discrepancy between Brown's testimony and Fontier's Declaration does not necessarily establish that Brown perjured herself. *See id.* (noting that there must be "a threshold inquiry [as to] whether the evidence demonstrates that the witness in fact committed perjury"). In fact, as a matter of logic, Brown's account of events seems more plausible than Fontier's. If Brown already knew that the murder occurred around noon, it does not make sense that she would still provide Fontier with a bank receipt showing a withdrawal around midnight and expect that to substantiate an alibi for Dore. Further, while Fontier's Declaration states that she told Brown that the murder was at noon during their meeting, her notes from that meeting only reference an "11:59 deposit" and that the incident in question occurred at "11:58"; her notes do not indicate whether these times were "A.M." or "P.M." – thus creating some question as to the accuracy of Fontier's recollection. (Fontier Decl. ¶ 9.) Nonetheless, even if Fontier's account of these events is correct, it only shows that Brown's recollection was inaccurate as to this particular detail of when she first learned the exact time of the murder. It does not conclusively establish that Brown perjured herself. *See United States v. Rodriguez*, 187 F. Appx. 30, 33 (2d Cir. 2006) ("Differences in recollection alone do not add up to perjury." (quoting *United*

5

*States v. Sanchez*, 969 F.2d 1409, 1415 (2d Cir. 1992))).

Additionally, even if Brown's testimony on this narrow point *did* constitute perjury, this testimony was not material to the verdict and did not affect the outcome of the trial. At trial, Brown admitted that she was not telling the truth when she went to meet with Fontier to provide an alibi for Dore. (Trial Tr. 355:9–24.) Therefore, Dore was free to argue to the jury – and, in fact, *did* argue – that Brown was an inveterate liar who not only lied to Fontier but also lied to the Court during the suppression hearing and at trial. (*See, e.g.*, *id.* at 1824–25.) However, Dore did not and does not argue that the alibi Brown presented to Fontier was true, and there is *no* evidence to suggest that Dore was actually with Brown at the time of the murder; to the contrary, Dore himself introduced the ATM receipt that conclusively showed that the bank transaction took place twelve hours *after* the murder. (*Id.* at 352–53.) If Fontier's testimony was being offered to suggest that Brown was telling the truth about the alibi, that would be a different situation entirely. But since that was never the contention, and is still not the contention, Fontier's testimony was at best cumulative and relevant only to establish what Brown herself admitted on the stand – namely, that she was prepared to lie to Fontier and to the Court in order to exculpate Dore. Accordingly, Brown's testimony, even if false, was unrelated to proving the elements of the crimes of which Dore was convicted, and only relevant to the collateral issue of Brown's credibility. Therefore, the Court finds that this testimony was not material to the verdict, was not admissible, did not unfairly prejudice the outcome of the trial, and does not create a concern that an innocent man was convicted.

b. Fontier's Request to Testify

Similarly, the decision to deny Fontier's request to withdraw as counsel mid-trial and testify in order to impeach Brown was not erroneous, and, even assuming it were, that error was certainly not material to the outcome of the trial.

Dore's precise argument is difficult to decipher, but he apparently contends that Fontier should have been allowed to testify because: (i) it is permissible to use prior inconsistent statements to impeach a witness; and (ii) Fontier's proposed testimony did not relate to a collateral issue. (Dore Mem. at 4–5.)

There is no dispute that prior inconsistent statements provide a valid topic for cross-examination; and, indeed, Dore was afforded ample opportunity to cross-examine Brown about her statements concerning what happened on the day of the homicide as well as her conversations with Fontier on that topic. (*See* Trial Tr. 345–89.) However, the Second Circuit has held – in a case cited in Dore's own brief – that the introduction of "extrinsic proof of a prior inconsistent statement" is only appropriate as it relates "to matters which are not collateral, *i.e.*, as to those matters which are relevant to the issues in the case and could be independently proven." *United States v. Blackwood*, 456 F.2d 526, 531 (2d Cir. 1972); *see also United States v. Purdy*, 144 F.3d 241, 245–46 (2d Cir. 1998) ("Extrinsic evidence offered for impeachment on a collateral issue is properly excluded."). Therefore, the fact that Dore hoped to impeach Brown with her alleged prior inconsistent statements does not end the inquiry; rather, the question becomes whether the impeachment related to a collateral issue.

6

Dore argues, in quite conclusory fashion, that Fontier's impeachment testimony was not on a collateral issue but "was central to the government's proof on the murder count" since "only [Brown]'s testimony linked [Dore] directly to that offense." (Dore Mem. at 4.) While it is true that Brown offered testimony linking Dore to the murder, including testimony that Dore admitted to participating in a robbery on December 12, 2011 in which someone was murdered (Trial Tr. 329:22–331:15), Fontier's testimony would only challenge Brown's statements as to what she knew when she went to Fontier with an alibi, not her testimony about Dore's involvement in the murder. Thus, while the issue of whether Brown knew the time of the murder when she offered the admittedly false alibi may bear on Brown's willingness to lie to Fontier or lie generally, it is unrelated to Dore's guilt or innocence – and thus entirely collateral.

As discussed above, testimony about Brown's untrustworthiness is precisely the type of impeachment for which extrinsic evidence is not permitted. *See Purdy*, 144 F.3d at 245; *see also United States v. Bitterman*, 320 F.3d 723, 727 (7th Cir. 2003) (noting "it is well-settled that one may not impeach by contradiction regarding collateral or irrelevant matters . . . and that a party may not contradict for the sake of contradiction" (internal quotations omitted)). In addition, testimony simply to impeach Brown's general credibility would be cumulative. The jury was presented with no shortage of evidence calling into question Brown's credibility. For instance, during trial, Brown admitted that she (1) lied to Fontier when she attempted to fabricate an alibi for Dore (Trial Tr. 355:9–24), and (2) lied under oath at the suppression hearing when she testified as a defense witness (*id.* 246–48, 348, 528–29, 540–42).

In addition, Brown testified quite extensively about her own involvement in multiple robberies with Dore and Barrett. (*See, e.g.*, *id.* at 272:17–298:19.) In light of the fact that the jury had all of this evidence, the Court is confident that Dore was not deprived of a meaningful opportunity to cast doubt on Brown's credibility. Indeed, Brown was crossed at length on all these of points.

Finally, the Court notes that neither of the two cases cited in Dore's brief provides support for his arguments. In *United States v. Blackwood*, the Second Circuit upheld the district court's decision denying defendant's request to recall a witness after discovering certain prior inconsistent statements because the proposed impeachment was on a collateral matter. 456 F.2d at 531. If anything, *Blackwood* seems to hurt Dore's argument. In the second case, *Laboy v. Demskie*, the court found that a state judge erred by excluding impeachment based on certain prior inconsistent statements because the judge incorrectly determined that the statements were not inconsistent. 947 F. Supp. 733, 742 (S.D.N.Y. 1996) (also finding that even though the judge should not have excluded the testimony, this mistake did not constitute constitutional error because the defendant had other opportunities to impeach the witness's credibility). Here, the Court did not bar Fontier's testimony because it was not inconsistent with Brown's, but because the whole dispute related to a collateral issue. Again, had Fontier been arguing that Brown's alibi was true – *i.e.*, that Dore was actually *with* Brown at the time of the murder – then her testimony would not be on a collateral issue. But Fontier never argued that and, in fact, concedes that there is no basis for such an argument. Accordingly, the Court finds that it properly

7

concluded that her testimony is inadmissible.

\* \* \*

In sum, the Court does not find that Brown perjured herself at trial and, even if she did, any false statement did not materially impact the outcome of the trial. Similarly, the Court finds no error in its denial of the request for Fontier to withdraw as Dore's attorney and testify in order to impeach Brown. Moreover, the Court does not find that Dore was prejudiced by this decision as he had more than sufficient opportunity to cross-examine Brown and significant evidence had been introduced – frankly, evidence far stronger than Fontier's testimony would have provided – challenging Brown's credibility. *See Laboy*, 947 F. Supp. at 742 ("While the prior statements themselves may have had some additional impeaching effect, it would not have created a reasonable doubt that did not otherwise exist, since [the witness's] credibility was already under significant attack."). Therefore, the Court has no trouble concluding that Dore has failed to meet the standard for a new trial under Rule 33.[5]

2. Barrett's Motion

Barrett argues that a new trial is warranted because the government's introduction of a video entitled "The Joy," in which Barrett and other individuals participate in a staged armed robbery, was improper pursuant to Rules 404(b) and 403 of the Federal Rules of Evidence.

As mentioned above, Defendants previously made a motion *in limine* to preclude the government from introducing the video at trial, arguing that (1) it was irrelevant, (2) did not allow for any permissible inference, and (3) was unduly prejudicial, thus violating Rules 402, 404(b), and 403 of the Federal Rules of Evidence, respectively. (Doc. No. 117.) After the government filed its opposition (Doc. No. 130), the Court held oral argument on that and the other motions *in limine*. The Court ruled that the video was admissible, finding it "relevant to establish the existence of the conspiracy[;] . . . relevant to establish the knowledge and intent of those who are depicted, [as well as] the relationship of trust, [and] modus operandi" of Defendants; relevant because it "depicts a [Mercedes-Benz] that . . . testimony [will assert] is the same car that was used to facilitate certain robberies"; and relevant because "there are depictions of guns which look to be just like the guns that were used in the robberies." (Feb. 27 Tr. 32:1–9.) Further, the Court found that the video was not unduly prejudicial (*id.* at 32:10–11), as it "doesn't have any graphic portrayals of violence" (*id.* at 6:8–9), and features far less violence than is routinely shown on television (*id.* at 6:13–25).

With respect to Rule 404(b), Barrett first argues that the "video was improperly utilized to show defendants' acted in conformity with certain character traits in violation of Rule 404(b)," and cites a post-trial conversation between a juror in the case and Barrett's counsel as evidence that "jurors improperly used the video to support a propensity inference." (Barrett Mem. at 7; Murphy Decl. ¶¶ 9–11.)[6] Further, Barrett

---

[5] The Court notes that Barrett joins in Dore's Rule 33 motion. (Decl. of Kenneth C. Murphy, dated Apr. 18, 2013, Doc. No. 191 ("Murphy Decl."), ¶ 12.) However, Barrett makes no additional argument with respect to Fontier's testimony. Accordingly, Barrett's joining in the motion does not impact the Court's analysis or denial of the motion.

[6] Even if this juror statement strongly supported Defendant's argument, the Court is barred from considering this evidence. Rule 606(b) of the Federal Rules of Evidence provides that "[d]uring an inquiry

8

contends that there was no legitimate purpose to introduce the video because the depiction of the Mercedes-Benz in the video was "cumulative and not relevant to a disputed fact" since Defendants "never contested that the Mercedes-Benz was under Barrett's custody or control," and the video was not relevant to establishing the conspiracy because the "defense never argued that the defendants were unknown to each other or unrelated." (Barrett Mem. at 6.) Finally, Barrett argues that even if the video had some limited probative value to an appropriate issue, the "prejudicial effect" of the video "overwhelmingly outweighed its probative value in violation of Rule 403" (*id.* at 6).

The Court remains unmoved. As an initial matter, it is not apparent to the Court that the video provides evidence of an "act" by Barrett that proves his "character" and thus falls within the ambit of Rule 404(b)(1). *See* Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.") The music video featuring Barrett might also be admissible as a "statement" made by and then offered against an opposing party. Fed. R. Evid. 801(d)(2)(A). *See* Fed. R. Evid. 801(a) (defining "statement" as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion"); *see also United States v. Foster*, 939 F.2d 445, 455 n.13 (7th Cir. 1991) (noting that rap lyrics written by defendant into his notebook, which were admissible under Rule 404(b), also "could have [been] categorized . . . as an admission by a party opponent").

Even assuming that Rule 404(b) applies, the Rule makes clear that evidence of an act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b); *see also United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003) (noting that the Second Circuit has "adopted an inclusionary approach to evaluating Rule 404(b) evidence, which allows evidence to be received at trial for any purpose other than to attempt to demonstrate the defendant's criminal propensity") (quotations and citations omitted). In this case, several permissible purposes existed for introducing the video, as stated in the Court's ruling at oral argument on Defendants' motions *in limine*. For instance, the video demonstrated (1) Barrett's possession and control over the same Mercedes-Benz that the evidence at trial showed was used in the commission of various robberies charged in the conspiracy; (2) the relationship between individuals involved in the charged conspiracy; (3) Defendants' modus operandi, such as the use of masks in committing robberies; and, (4) their possession of or access to firearms.

Other courts have reached the same conclusion. Although the Court is unaware of any case specifically addressing the admissibility of a music video, there are several decisions finding rap lyrics written by a defendant to be admissible so long as the lyrics are relevant to a permissible purpose under Rule 404(b). For instance, in *Foster*, the Seventh Circuit reviewed the district court's admission of rap lyrics

---

into the validity of a verdict or indictment, a juror may not testify about . . . any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters." While there are three narrow exceptions to this Rule, *see* Fed. R. Evid. 606(b)(2), Defendant does not argue that any of them apply in this case. Accordingly, the Court does not consider this evidence in evaluating the motion.

9

written by the defendant, who was convicted of possession with intent to distribute cocaine and phencyclidine.[7] 939 F.2d at 449. The defendant argued that the lyrics "have artistic value," "are fiction," and, thus, "cannot be relevant to his guilt." *Id.* at 456. The Seventh Circuit disagreed, finding that defendant's authorship of the lyrics "exhibited some *knowledge* of narcotics trafficking, and in particular drug code words," and thus were probative of whether the defendant knew that he was carrying illegal drugs. *Id.* (emphasis added); *see also United States v. Houston*, 205 F. Supp. 2d 856, 865 n.6 (W.D. Tenn. 2002) *aff'd*, 110 F. App'x 536 (6th Cir. 2004) (noting that where defendant argued that he unknowingly possessed a firearm, it was "likely that the government could have introduced the [music lyrics] under 404(b) . . . [as] evidence of defendant's statements . . . expressing knowledge of or affinity for the possession or use of various handguns[, which] could be probative of either his 'knowledge' of the firearm's presence, or an 'absence of mistake or accident' in his possession of them.").

Similarly, in *United States v. Stuckey*, the Sixth Circuit upheld the district court's ruling that rap lyrics written by the defendant were admissible. 253 F. App'x 468, 482–84 (6th Cir. 2007). The defendant was charged with murdering an informant and the government introduced "rap lyrics written by Stuckey that exhibited Stuckey's negative feelings toward 'snitches' and described shooting witnesses, wrapping their bodies in plastic, and dumping their bodies in the road, which is what happened to" the victim in that case. *Id.* at 473. The district court held that the lyrics were admissible as prior statements about a characterization of snitches, but, even if the lyrics were considered "prior bad acts . . . they would have been admissible to show knowledge, preparation, plan, and arguably modus operandi." *Id.* at 482. "The Government introduced the rap lyrics not to show that Stuckey was of a bad character or had a propensity for violence (or another bad character trait), but to show that he killed [the victim]. Statements that Stuckey dislikes and kills 'snitches,' fills their bodies with holes, wraps them in blankets, and dumps them in the road provides direct evidence that Stuckey shot [the victim], wrapped his body in blankets, and dumped it in the road." *Id.* at 482–83. Likewise, in the present case, "The Joy" is admissible to show Barrett's intent, plan, knowledge, and identity.

Barrett next argues that several of the issues justifying the introduction of the video were not "really in dispute" and therefore did not provide legitimate reasons to introduce the video, or, at the very least, that the video should not have been introduced in the government's case-in-chief. (Barrett Mem. at 7). This argument is unavailing.

First, the video was relevant to establishing "identity" and "common scheme" and, thus, since Barrett disputed that he committed the alleged crimes, the video was appropriately introduced in the government's case-in-chief. *United States v. Figueroa*, 618 F.2d 934, 939 (2d Cir. 1980) ("If the evidence is offered to prove that the defendant committed the act charged in the indictment, for example, by proving identity or common scheme, the evidence may be offered during the prosecution's case-in-chief, unless the defendant's commission of the act is not a disputed issue."). Further, as

---

[7] The lyrics at issue were: "Key for Key, Pound for pound I'm the biggest Dope Dealer and I serve all over town. Rock 4 Rock Self 4 Self. Give me a key let me go to work more Dollars than your average bussiness [sic] man." *Id.* at 449.

the Second Circuit has made clear, if a defendant seeks to exclude evidence because it is probative of issues not in dispute, the defendant has an obligation to inform the court of this fact both with "sufficient clarity" and at the appropriate time. *Id.* at 942 ("When the Government offers prior act evidence to prove an issue, counsel must express a decision not to dispute that issue with sufficient clarity that the trial court will be justified (a) in sustaining objection to any subsequent cross-examination or jury argument that seeks to raise the issue and (b) in charging the jury that if they find all the other elements established beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed. . . . While those consequences can be attached to a formal stipulation that the issue has been conceded, a formal stipulation is not required or necessarily appropriate." (internal citations omitted)). Here, there was no stipulation as to any facts that Barrett claims were undisputed nor did Defendants otherwise make sufficiently clear that they did not intend to dispute these facts. Accordingly, Barrett cannot now make this argument after a guilty verdict has been returned.

Barrett also advances one final argument as to how the video unfairly prejudiced him. The argument seems to be that (1) there was testimony of a violent robbery that took place in Castle Hill in which Todd's friend participated but Barrett did not; (2) Taylor identified Todd's friend in the video; and (3) this identification "had a significant negative prejudicial spillover effect to Barrett's defense" and "prejudicially implied that Barrett was in some way related to and linked with another co-conspirator in a separate robbery conspiracy." (Barrett Mem. at 8.) This argument also fails. Barrett's characterization of the Castle Hill robbery as being part of a separate conspiracy in which Barrett had no part is not supported by the evidence. While Barrett may not have participated in the actual stabbing and robbery, there is evidence that this incident was part of the same conspiracy in which he and Dore participated. Taylor testified that, prior to the incident in question, Barrett, Dore, and others vainly waited for the Castle Hill victim to come home but the man did not arrive. (Trial Tr. 1037:14–1038:12.) Further, after learning that the victim had been stabbed, Barrett then approached Dore and asked for his share of the robbery proceeds. (*Id.* at 1038:13–1040:4.) Therefore, even without the video, there is significant evidence linking Barrett to the violent robbery in Castle Hill and to those individuals who actually carried it out. The fact that the video shows Barrett and these other individuals together is not unduly prejudicial, but rather further probative evidence of the relationship between these individuals and of the conspiracy. Accordingly, the Court also rejects this argument.

\*   \*   \*

The Court is not persuaded by the arguments raised by Dore or Barrett as to why they are entitled to a new trial under Rule 33. The government presented sufficient, in fact, overwhelming evidence to support guilty verdicts against both Defendants on each of the seven Counts of the Second Superseding Indictment. As such, Dore's and Barrett's motions raise no concern for the Court that innocent men have been convicted. Accordingly, both Dore's and Barrett's motions for a new trial pursuant to Rule 33 are denied.

11

## IV. CONCLUSION

For the reasons stated above, Dore's and Barrett's motions pursuant to Rule 29 and Rule 33 are denied. The Clerk of the Court is respectfully requested to terminate the motions pending at Doc. Nos. 190 and 193. Dore's motion during trial for Fontier to withdraw as counsel, which the Court denied from the bench, has not been terminated on the docket for this case. Therefore, the Clerk of the Court is also respectfully requested to terminate the motion pending at Doc. No. 154.

Dore shall be sentenced on August 2, 2013 at 2:30 p.m. in Courtroom 905 of the Thurgood Marshall Courthouse. Barrett shall be sentenced on September 25, 2013 at 2:30 p.m. at the same location.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: July 31, 2013
       New York, New York

\*   \*   \*

The government is represented by Assistant United States Attorneys Amy Lester and Jessica A. Masella, United States Attorney's Office, One St. Andrew's Plaza, New York, New York 10007.

Defendant Dore is represented by Alice L. Fontier, 369 Lexington Avenue, 2nd Floor, New York, New York 10017, and Ying Stafford, Law Offices of Ying Stafford, 276 Fifth Avenue, New York, New York 10001.

Defendant Barrett is represented by James M. Roth, Hurwitz Stampur & Roth, 299 Broadway, Suite 800, New York, New York 10007, and Kenneth C. Murphy, Simon & Partners LLP, 515 Fifth Avenue, New York, New York 10176.

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-31-13
```

12