D821dors

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                          12-CR-45 (RJS)

5   JERMAINE DORE,

6            Defendant.                  Sentencing

7   ------------------------------x

8                                        New York, N.Y.
                                         August 2, 2013
9                                        2:45 p.m.

10
    Before:
11
                     HON. RICHARD J. SULLIVAN,
12
                                         District Judge
13

14                       APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    AMY R. LESTER
17  JESSICA A. MASELLA
    MICHAEL D. MAIMIN
18       Assistant United States Attorneys

19  ALICE L. FONTIER, ESQ.
         Attorney for Defendant
20

21  ALSO PRESENT:  ANTHONY MELCHIORRI, ATF Agent

22

23

24

25

                   SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

D821dors

1             (In open court; case called)

2             THE CLERK:  For the government?

3             MS. LESTER:  Good afternoon, your Honor.  Amy Lester

4    for the government.  With me at counsel table are assistant

5    United States attorneys Jessica Masella and Michael Maimin, as

6    well as Special Agent Anthony Melchiorri with the ATF.

7             THE COURT:  Yes.  All right.  Good afternoon to each

8    of you.

9             And for the defendant?

10            MS. FONTIER:  Good afternoon, your Honor.  Alice

11   Fontier on behalf of Jermaine Dore, who is seated next to me.

12            THE COURT:  All right.  Ms. Fontier, Mr. Dore, good

13   afternoon.

14            We are here for sentencing.  This is a case that went

15   to trial.  The jury returned a guilty verdict on seven counts

16   involving Mr. Dore.  Two of them involved mandatory consecutive

17   sentences.  So the sentences required by the counts are very,

18   very high.  We'll talk about all that in a moment.

19            What I want to do now is just make sure that I have

20   everything that's been submitted in connection with sentencing.

21   If something is missing, then of course let me know.

22            I have first of all received the July 26, 2013

23   presentence report from the probation department.  I've also

24   reviewed Ms. Fontier's July 24th submission, which is an

25   11-page, double-spaced submission.  I have the government's

D821dors

 1    sentencing submission, which is dated July 29th and it is a

 2    12-page, double-spaced submission.  Just today or maybe it was

 3    last night I received the proposed order of restitution from

 4    the government, which lists the names of various victims of the

 5    robberies that were referenced at the trial.  And that's all I

 6    have really that's related to sentencing.  I guess I had a

 7    couple things from Mr. Dore that related to getting documents

 8    in preparation for trial.  I issued an order on that back on

 9    July 7th.  They're not really relevant to the sentencing

10    determination to be made today, although I guess they're

11    technically connected to sentencing.

12            So is there anything else I've overlooked that should

13    be part of the record that I haven't mentioned?  Ms. Lester?

14            MS. LESTER:  No, not from the government, your Honor.

15            THE COURT:  Ms. Fontier?

16            MS. FONTIER:  No, that's everything, your Honor.

17            THE COURT:  Well, then let's begin with the

18    presentence report.  Ms. Fontier, you've received a copy of the

19    presentence report, the final presentence report?

20            MS. FONTIER:  Yes, your Honor.

21            THE COURT:  And you've reviewed it with Mr. Dore?

22            MS. FONTIER:  I have, your Honor.

23            THE COURT:  And do you have any objections to what's

24    in the report?

25            MS. FONTIER:  Your Honor, as the court is aware, in my

D821dors

sentencing memorandum I submitted detailed objections to the

presence report, which were also submitted to the probation

department.

THE COURT:  Right.

MS. FONTIER:  In the final report they have resolved I

believe all but one of the objections that I submitted.  The

only objection which I believe remains outstanding at this

point is that I objected to what was paragraph 84, is now

paragraph 83, which increased the offense level for that count

for use of a dangerous weapon for the October 11th, 2011

incident on the basis that a bat was used to hit the car.  I

couldn't find any authority for stating that using an object

against another object is sufficient to sustain a four-point

increase, so I had asked that -- I had objected to that

increase.  The probation department still feels that it is

appropriate.  I thought that it should only be a three-level

increase for brandishing of a weapon, but that is an unresolved

objection.  It's the only one, I believe.

THE COURT:  And it will have no impact at all on the

Sentencing Guidelines calculation, right?

MS. FONTIER:  None whatsoever.

THE COURT:  So I think I can probably just leave it

unresolved because I don't think the facts are in dispute.

It's just a technical application of the Sentencing Guidelines

which, at the end of the day, will not have any impact on the

D821dors

1   ultimate guidelines calculation.  So that's what I'm inclined

2   to do.  You have no objection to that, do you?

3           MS. FONTIER:  I do not, your Honor.

4           THE COURT:  All right.  Let me see if the government

5   has received a copy of the final resentence report.

6           MS. LESTER:  Yes, we have, your Honor.

7           THE COURT:  And do you agree with it?  Do you have any

8   objections to what's in the report?

9           MS. LESTER:  No, your Honor.  However, as a technical

10  matter, I just wanted to point out that under Rule 32,

11  specifically subsection (e)(2), the initial presentence report

12  must normally be received by the defense, in fact by all the

13  parties, 35 days prior to sentencing.  In this case the initial

14  presentence report was disclosed on July 11th, so that was

15  not within the amount of time under the rule.  The defendant

16  can waive that period of time if he wishes to be sentenced

17  sooner, so the government would just ask that the defendant

18  formally waive that time period.

19          THE COURT:  All right.  Do you agree that you didn't

20  get the initial report until July 11th, on or about?

21          MS. FONTIER:  Yes, your Honor.  And Mr. Dore made it

22  quite clear to me that he would like to keep the sentencing

23  date of today.

24          THE COURT:  All right.

25          MS. FONTIER:  So to the extent that it needs to be

D821dors

1    waived on the record, it is so waived.

2                THE COURT:  Okay.  That's accurate, Mr. Dore?  You

3    want to go forward today?

4                THE DEFENDANT:  Yes, sir.

5                THE COURT:  I'd give you more time if you want it, but

6    if you don't think it's necessary, certainly I'll respect your

7    wishes on that.  So you're comfortable with going forward

8    today?

9                THE DEFENDANT:  Yes, sir.

10               THE COURT:  All right.  So I think the record now is

11   clear.

12               All right.  Let's then talk a little bit about the

13   Sentencing Guidelines.

14               Mr. Dore, there are a number of factors that a court

15   has to consider in deciding the appropriate sentence in the

16   case.  One those factors is what's called the United States

17   Sentencing Guidelines, which I know you're somewhat familiar

18   with.  I'm sure Ms. Fontier has discussed them with you.  The

19   guidelines are a big book that is put out by a commission of

20   judges and lawyers and other experts in the field, and it's a

21   book that's designed to give guidance to judges.  The rules can

22   be quite technical.  This book is about 500 pages long.  So

23   there's a lot of technical aspects of it.  We're not going to

24   go over the book in tremendous detail, but the way it works is

25   that a judge is directed to apply the facts of a particular

D821dors

1    case to the book, and so for every crime or type of crime,

2    there's a chapter or a subchapter in the book.  The judge then

3    makes findings of fact and, based on what's in the book, will

4    assign points, adding, subtracting as the judge goes, and

5    ultimately will come up with a number.  We're going to spend a

6    few minutes focusing on the guidelines and how they apply in

7    this case.  There are other factors that also have to be

8    considered, but that's where we're going to start.

9             So the guidelines calculation is set forth in the

10   presentence report beginning at page 11, all right?  And other

11   than that one calculation that was disputed by Ms. Fontier, it

12   seems that the parties are in agreement as to how the

13   guidelines apply here.  There are multiple robberies that were

14   referenced in the trial.  There's a conspiracy charge and then

15   substantive charges of robbery.  And then there's various gun

16   counts.  We're right now talking about the robbery counts, and

17   then we'll be talking about Count Seven, which is what we've I

18   guess been referring to as a weapons charge but a weapons crime

19   that resulted in death.  So we'll talk about that in a moment.

20   But each of the robberies is treated as a separate offense, and

21   so the court does a separate guidelines calculation for each

22   robbery, and again, I don't think there's any dispute about how

23   the guidelines apply to those robberies, with the one

24   exception.  Basically each of the robberies has a base offense

25   level of 20.  There are enhancements for certain of the

D821dors

1    robberies based on the amount that was taken by force in the

2    robbery and whether or not there was force used or injuries

3    sustained during the course of the robbery.  With the exception

4    of paragraph 83, the parties are in agreement and I'm in

5    agreement with how the guidelines apply to the robbery counts.

6    I guess if I have to choose, I'd probably defer in favor of the

7    defendant on paragraph 83 and not apply the two-level

8    enhancement, but as I said before, it wouldn't make any

9    difference here for purposes of the ultimate guidelines

10   calculation.  So for the 12 robbery groups, the guidelines will

11   be what's set forth in the presentence report except with

12   respect to Group 6.  I guess on that I'll knock down two, so it

13   will be 25.

14          Now we next talk about what we're calling the murder

15   count.  That has been calculated as a level of 43, because a

16   death resulted, and so there's no dispute about that,

17   Ms. Fontier?

18          MS. FONTIER:  No, your Honor.

19          THE COURT:  So that kind of knocks all the others out

20   of the box, because 43 is so much higher than the others, which

21   are either 28 or less than 28, so ultimately, the others have

22   ultimately no impact on the guidelines, so the guidelines are

23   level 43.  When you do the calculation for all the 12 groups

24   that are implicated, you still come up with level 43.

25          So level 43, according to this book, is life,

D821dors

1   mandatory life, according to the guidelines manual.  It's not

2   the only thing we consider, but that's a factor that the court

3   has to consider.

4           In terms of criminal history, I guess I should note, I

5   don't think there's any dispute, that Mr. Dore has four

6   criminal history points based on three prior convictions.  He's

7   in criminal history category III.  It doesn't alter the life

8   range that's required under level 43, but that's the criminal

9   history category.

10          Okay.  Then we have two counts that are mandatory

11  consecutive sentences, which require that a sentence imposed

12  for those counts, the two gun counts, would be 5 years for the

13  first and 25 years consecutive for the second, which means I'd

14  impose a sentence on the robberies and the murder and then

15  mandatory 5 years on the first gun count and a mandatory 25

16  consecutive on the second gun count, so it's basically a

17  30-year mandatory consecutive sentence on top of what I impose

18  for the murder.  So we're talking very high numbers, but that

19  is what the guidelines require and what the mandatory

20  consecutive sentence requires, what the statute requires for

21  cases involving gun offenses like this one.

22          All right.  Is there any disagreement with that, the

23  30-year mandatory consecutive sentence on top of a sentence for

24  Count Seven and the robbery counts?

25          MS. LESTER:  No, your Honor.

D821dors

1              MS. FONTIER:  No, your Honor.

2              THE COURT:  All right.  So that's kind of the ballpark

3     we're in, Mr. Dore.

4              Now there are other factors that I have to consider

5     with respect to the first sentence, not the mandatory.  I can't

6     do anything about the mandatory consecutives, but with respect

7     to the first sentence on the robberies and the murder charge,

8     in addition to the guidelines, I have to consider your own

9     personal history, the facts and circumstances of your life from

10    your birth to your childhood, your youth, your work history,

11    your educational history, your criminal history, your family

12    circumstances.  All the things that make you who you are, I

13    have to look at those things.

14             I also have to consider the facts and circumstances of

15    these crimes.  This is a very serious crime.  And it's not just

16    the name of the crime, robbery, or possession of firearm, or

17    murder.  It's the actual details, the facts, what you did, what

18    others did or for how long a period of time, how victims were

19    affected and harmed.  All of those things have to come into the

20    calculus.  And I have to impose a sentence that's going to

21    reflect both the seriousness of these crimes and that's also

22    going to promote respect for the law and provide a just

23    punishment for the crimes.

24             So I have to also consider the need to deter or

25    discourage you from committing crimes in the future and others

D821dors

1   from committing crimes in the future, others who might learn of

2   your sentence and from that learn a lesson about it, say, I'm

3   not going to carry a gun, I'm not going to engage in this kind

4   of activity because I heard what happened to Mr. Dore.  That's

5   something that's a legitimate objective of sentencing, and

6   courts have to take that into account.

7          A couple of other factors courts have to consider is

8   to consider your own needs while you're in custody, so to the

9   extent you have medical needs or mental health needs, substance

10  abuse treatment needs, the court should consider that and make

11  those a part of the sentence.

12         In addition, I have to make sure that the sentence I

13  impose on you is not wildly out of whack or is not wildly

14  different from the sentence imposed on other people who are

15  similarly situated to you, who engaged in similar crimes and

16  have been sentenced for similar crimes.

17         And weighing those different factors, I have to come

18  up with a sentence that I think is appropriate to meet each of

19  those objectives, even though, candidly, sometimes the

20  objectives can be in tension with each other.  Sometimes some

21  of those factors I just mentioned can be argued in favor of

22  leniency and others can be argued in favor of a harsher

23  sentence.  So my job is to balance those things.

24         What we're going to do now is I'm going to hear from

25  Ms. Fontier.  I'll allow her to speak to all these different

D821dors

1   factors.  She did in her papers, in her submission to me, but

2   I'll give her the opportunity to make those points here in

3   court.  I'll then hear from Ms. Lester, who will have a chance

4   to respond, to make arguments, again, relating to the same

5   factors.  And then after I've heard from them, I will hear from

6   you if you would like to address the court.  You don't have to

7   speak, but you'd be welcome to and I would allow you to.

8           Now can I ask, are there any victims here who wish to

9   be heard?

10          MS. LESTER:  No, your Honor.  The victims are aware of

11  the sentencing date, but there are no victims here who wish to

12  be heard.

13          THE COURT:  All right.  So victims also have a right

14  to be heard.  They're not required to be heard, but if they

15  want to, then I would give them a chance to speak as well.

16  Obviously I have a number of people in the courtroom.  Some I

17  recognize, some I don't.  But just so we're clear, are there

18  any victims or those who believe themselves to be victims who

19  are here and who wish to be heard before I impose sentence?

20          No.  All right.

21          Okay.  So Ms. Fontier, let's begin with you.  I've

22  read your submission.  Thank you.  It was thoughtful.  But

23  anything else you'd like to say, I'm happy to hear you.

24          MS. FONTIER:  Thank you, your Honor, and I certainly

25  won't repeat what I've placed in my sentencing submission.

D821dors

1      Your Honor, I don't know if you've actually been to

2   the attorney visiting rooms in MDC or MCC.

3      THE COURT:  I have, yes.

4      MS. FONTIER:  So your Honor's aware that they're just

5   small rooms where you sit with just you and your client, and

6   over the last year and a half, I've spent a great deal of time

7   in those small rooms just with Mr. Dore.  Many, many hours that

8   I've spent with him.  And in that time I've gotten to know him.

9   I've gotten to know him quite well.  Now, your Honor, when I

10  read through the government's sentencing memorandum, I thought

11  to myself, this is not someone who I would like to meet.  This

12  is someone who I would be afraid to be alone with.  The

13  portrait of the man in the government's memo is a cold,

14  callous, violent person.  And that portrait, the portrait of

15  Mr. Dore that is in that memo, is totally incongruous with the

16  man that I know, the man that I've sat for many hours with.

17  The Jermaine Dore that I know is warm, polite, he has treated

18  me with nothing but the utmost respect.  Quite frankly, I think

19  of him as a friend of mine, while he also, your Honor, has

20  family that he loves and that love him in return.  His brother

21  and his cousin are present here today.  His brother you may

22  recognize because he was present for --

23      THE COURT:  Yes.

24      MS. FONTIER:  -- the vast majority of the trial.  They

25  are unwavering in their support of him.  His sister also

D821dors

1    remains entirely supportive.  I spoke to her I believe on

2    Monday.  She was hoping to be able to get out of work and be

3    here today as well, and I'm sure that she is disappointed that

4    she cannot be here to show the court her support for Mr. Dore

5    because it is still there.  They love him very much and he

6    loves them.

7           Your Honor, he also has a young daughter, about 3

8    years old.  It breaks Mr. Dore's heart -- he has expressed this

9    to me -- that she will grow up without a father, that she will

10   never know him.  And your Honor, I'm telling you these things

11   about Mr. Dore not to lessen the seriousness of the offenses

12   for which he has been convicted but to tell you that Mr. Dore

13   is more than just these convictions.  He's a father, he's a

14   brother, he's a friend.  And your Honor, I'm asking you to

15   impose a sentence that is something less than a life sentence.

16          Now I asked for 30 years in the sentencing papers, and

17   I believe that that is a very substantial sentence.  Mr. Dore

18   is just 26 years old.  It's longer than he's been alive.

19          THE COURT:  I understand that, but you're asking me to

20   sentence him to zero on the robberies and the murder and then

21   just impose consecutive sentences on the weapons, right?

22          MS. FONTIER:  Yes, your Honor, and I understand that

23   that is not a likely sentence or something that the court will

24   find sufficient.

25          THE COURT:  Well, I'm supposed to impose the sentence

D821dors

 1    that I believe appropriate on the nonmandatory consecutive

 2    counts and then allow the mandatory consecutives to do what

 3    they do, whether I agree or don't agree with them.  Sometimes I

 4    think the mandatory minimums or mandatory consecutives are not

 5    appropriate, but that's not for me to decide.  But you agree

 6    that that's the proper way for me to approach this.

 7            MS. FONTIER:  That's the correct procedural way, yes,

 8    your Honor, but I do think that ultimately, and what is, you

 9    know, the overwhelming goal of sentencing is that at the end of

10    this, your Honor proposes -- imposes sentence that is

11    sufficient but not greater than necessary to meet the needs of

12    justice.  Your Honor, I ask this question:  Does justice

13    require that this man, who is a father, a brother, a friend,

14    does justice require that he die in jail?  Or could the needs

15    of justice be met by allowing him the one human dignity of

16    being released at an elderly age and dying a free man?  I think

17    there is some number less than life that is sufficient but not

18    greater than necessary, your Honor.

19            THE COURT:  Thank you.

20            MS. FONTIER:  Thank you.

21            THE COURT:  Ms. Lester?

22            MS. LESTER:  Your Honor, Ms. Fontier is correct that

23    her description of the defendant could not be more different

24    than the description of the defendant in the government's

25    submission.  But the government's description of the defendant

D821dors

1    is based on the testimony at the trial of people who knew the

2    defendant, who committed crimes with him, specifically Patrick

3    Taylor and Janiel Brown, and the testimony of the victims who

4    were brutally robbed by Mr. Dore and who, time and time again,

5    as we outlined in our sentencing submission, described someone

6    who viciously attacked them, physically hurting them, in some

7    cases causing them to be hospitalized, or terrorized them with

8    weapons, whether it be a knife or a gun.  And this defendant,

9    because of his central role in this violent crew that committed

10   more than ten robberies over a very short period of time, and

11   because of his remorseless actions in the sense that he

12   committed robbery after robbery and, specifically on

13   December 12th of 2011, committed two robberies in one day,

14   the first of which resulted in a murder and then a few short

15   hours later decided to go out and commit another armed robbery,

16   this is a man whose conduct would not have stopped but for the

17   fact that he was arrested in this case.  Indeed, since the day

18   of the murder, he committed at least two other robberies that

19   were proven at trial.  So clearly this is not someone who would

20   have stopped his illegal conduct but for the interference of

21   law enforcement.

22           For those reasons, mainly the nature and circumstances

23   of the violent offenses in this case, the seriousness of those

24   offenses, especially the murder, and Mr. Dore's own history and

25   characteristics in which, again, he's shown no remorse and

D821dors

 1    no -- given no explanation for his conduct, we believe that a

 2    sentence of life imprisonment followed by the mandatory minimum

 3    term of 30 years, which must run consecutive, is appropriate in

 4    this case.  We believe that this sentence will promote respect

 5    for the law and deterrence for the general public.  It will

 6    make someone think twice before they make the decision to join

 7    a crew like this and carry a gun and get caught up in a series

 8    of acts that end up in the result -- resulting in someone

 9    else's death.  We believe that this sentence is appropriate in

10    terms of protecting the public from Mr. Dore because clearly

11    he's shown that he presents a grave danger to society and the

12    public does need to be protected from him.

13            So for all these reasons, the government asks that the

14    court impose the guidelines sentence of life imprisonment on

15    Counts One, Three, Five, and Seven, and followed by the

16    mandatory minimum term of 30 years on Counts Two and Four.

17            THE COURT:  Wait.  I think One, Three, and Five have

18    20-year maximums, right?

19            MS. LESTER:  Yes, your Honor, they do.  The guideline

20    is 20 years, that's correct.

21            THE COURT:  All right.  Ms. Fontier, anything you want

22    to say in response?

23            MS. FONTIER:  No.  Thank you, your Honor.

24            THE COURT:  And Mr. Dore, as I said, you have the

25    right to address the court if you'd like to but you're not

D821dors

1    required to, but if you wish to, now is the time to do it.

2              MS. FONTIER:  Mr. Dore is indicating that he does not

3    wish to make a statement, your Honor.

4              THE COURT:  That's fine.  I understand.

5              All right.  Well, let me state the sentence I intend

6    to impose and my reasons for it, and then when I have finished,

7    I will ask the lawyers if there's any reason why I can't impose

8    that sentence under the law, and if there is no impediment

9    legally to imposing the sentence, then I will go forward

10   formally with the sentence.

11             Look, this is a tragic day.  I look out at Mr. Dore's

12   family and at Mr. Dore.  I listened to what Ms. Fontier has

13   said, and I don't disagree that there's more to Mr. Dore than

14   these crimes.  I think that's obvious.  Obviously there are

15   people who care about him, people who are suffering to see him

16   in the situation that he's in.  Mr. Dore strikes me as a person

17   of intelligence and ability, who has a lot to offer, and so

18   that I think is a given, and I start with that premise.  Of

19   course that's not the only thing that I have to consider, but I

20   do think it's worth at least acknowledging that this is a human

21   being and a human being who is complicated, like most human

22   beings, and has good qualities.  I don't doubt that.

23             Of course I have to balance that with the facts of

24   these crimes, and these crimes are very serious and in some

25   cases unspeakable violence and numerous and cruel in the way

D821dors

they were executed.  I presided over the trial so I heard many

of the victims speak in their testimony about what they endured

physically and psychologically as a result of these crimes, and

it's very clear that this was a conspiracy, this was a group

that preyed on people and used fear and threats of violence and

actual violence to get money, ultimately not even a tremendous

amount of money, but the cruelty and the violent nature of this

group was just so obvious, and to listen to the victims speak,

to just hear how there was something so wrong, so morally

bankrupt about what was going on in this case by Mr. Dore and

the others.  Ms. Lester talks about the situation where,

shortly after the murder, the same day as the individual was

killed during the course of a robbery, Mr. Dore's basically

signing up to just do another one.  And so certainly during the

life of this conspiracy there was no remorse.  Certainly during

the life of this conspiracy there was no thought about

stopping.  It seemed that this was a way of life, and it was

understood that violence comes with the territory.  The murder

is the most serious of them, but the others, the only reason

they didn't result in murders is because either the victims

didn't do anything foolish or because the conspirators were

more careful on those occasions, but they could have easily

resulted in somebody being killed.  So these are truly violent

crimes that have tremendous, you know, truly serious

consequences.  A man lost his life.  He's not here today,

D821dors

obviously.  His family is not here today.  We don't have anyone

speaking on behalf of the victim, but that victim presumably

had a family and had talents and things to offer that were

snuffed out in the course of that robbery.

So look, in the course of my life I have certainly

seen crimes worse than these, but not many, and I think the

sentence imposed here has to be very harsh to send a message

that we as a society just don't tolerate this, can't tolerate

this, and that we have to protect people living in society.

Ms. Fontier has asked for a sentence of effectively

zero on the first counts, to be followed by the 30-year

mandatory consecutive.  I mean, I think there's no way I can

even consider that.  That just strikes me as an immoral

sentence.  I think the real issue for me is whether a life

sentence on Counts One, Three, Five, and Seven, as the

guidelines contemplate, is appropriate, or whether something

lesser would be consistent with the objectives of sentencing.

I am persuaded that something less than life would be

appropriate here, but not much less, because it's something

that I think can't be so much less that it just sends the wrong

message, that the court is, frankly, just not that serious

about what he's telling you.

So the sentence I intend to impose, in light of all

these different factors, after a great deal of thought, is a

sentence of 35 years on Count Seven, to be served concurrently

D821dors

with 20-year sentences on Counts One, Three, and Five, which

are the maximums for those, to be followed then by a 5-year

mandatory consecutive term on Count Two and a 25-year mandatory

consecutive term on Count Four.  So the whole thing comes to 35

years plus 30 years mandatory consecutive.  That may ultimately

be a life sentence ultimately, but as a practical matter,

because of the mandatory consecutives, although one can rail

against them in certain circumstances, I think this is probably

not the best example of the abuse of mandatory consecutive

sentences, given the nature of the crimes and the repetitive

criminal activity that went on here.

        So that's the sentence I intend to impose.

        I intend to impose a term of supervised release of

three years on Counts One, Three, and Five, five years on the

others, so that's probably academic.

        I'm not going to impose a fine.

        The government's not seeking forfeiture.  But I think

restitution is appropriate.  But you didn't speak to that,

Ms. Fontier.  Do you have any objection to the restitution

order that was proposed?  I'm inclined to order restitution for

the amount that is set forth in the government's proposed

restitution order.

        MS. FONTIER:  Your Honor, I've reviewed the order that

was provided at the beginning of this appearance.  I don't have

any specific objections to the language or the amount or what

D821dors

1  was stated at trial.  Obviously Mr. Dore went to trial and

2  maintains his innocence so we're not consenting to it, but the

3  actual specifics of it, no, there's no objection.

4           THE COURT:  No specific objection.  And the government

5  has nothing for the decedent or the decedent's family, which I

6  think they would be entitled to some restitution, but there's

7  nothing there, right?

8           MS. LESTER:  That's correct, your Honor.

9           THE COURT:  Okay.  All right.  That's the sentence I

10  intend to impose.  Is there any legal impediment to my imposing

11  that sentence, Ms. Fontier?

12           MS. FONTIER:  Not that I'm aware of, no.

13           THE COURT:  Ms. Lester?

14           MS. LESTER:  No, your Honor.  The court did not

15  mention the special assessment, but we believe the court also

16  intends to impose that.

17           THE COURT:  Oh, yes, $700 special assessment.  Thank

18  you.

19           All right.  Mr. Dore, I'm going to ask you to stand

20  while I formally impose sentence.

21           Mr. Dore, having presided at your trial where the jury

22  verdict returned a guilty verdict on Counts One through Seven,

23  I sentence you as follows:

24           I sentence you to a term of incarceration of 35 years

25  on Count Seven, to run concurrent with sentences of 20 years on

D821dors

Counts One, Three, and Five, to be followed by a 5-year

mandatory consecutive sentence on Count Two, which is then to

be followed by a second mandatory consecutive sentence, this

time of 25 years, on Count Four, for a total of 35 years plus

30 years mandatory consecutive.

In addition, I'm going to impose a term of supervised

release of three years on Counts One, Three, and Five, five

years on Counts Two, Four, Six, and Seven.

I'm going to impose a special assessment of $700.

I will order restitution in the amount of $85,000 as

set forth in the proposed order of restitution provided by the

government.

Your term of supervised release, if you live long

enough to be released, will include the following mandatory,

standard, and special conditions:

You shall not commit another federal, state, or local

crime; you shall not illegally possess a controlled substance;

you shall not possess a firearm or destructive device of any

kind; you shall refrain from the unlawful use of any controlled

substance; you shall cooperate in the collection of DNA as

directed by your probation officer.

There are 13 standard conditions which will be imposed

in this case, as they are in virtually all cases involving

supervised release.

I will also add the following special conditions:

D821dors

1          First, that you shall obey the immigration laws and

2     comply with the directives of immigration authorities.

3          Second, that you will report to the nearest probation

4     office within 24 hours of your release from custody, unless

5     you're released on a holiday or weekend, in which case you'll

6     report the next business day.

7          You are also to be supervised in the district of your

8     residence, which I guess when you get out, I'm not sure where

9     that will be, probably in the Bronx, though it's possible you'd

10    be deported.  But if you're still here, then you should report

11    to the building next door, 500 Pearl, all right?

12          All right.  Are there open counts?

13          MS. LESTER:  Yes, your Honor.  The government would

14    move to dismiss the underlying indictment in this case --

15    underlying indictments.

16          THE COURT:  I will dismiss the underlying indictments.

17          Are there any recommendations you'd like me to make,

18    Ms. Fontier, with respect to where Mr. Dore should be housed or

19    anything else?

20          MS. FONTIER:  As close to New York as possible so that

21    his family can continue to visit him, your Honor.

22          THE COURT:  All right.  Mr. Dore, I can't order but I

23    can recommend, and I will recommend, that you be housed in a

24    facility by the Bureau of Prisons as close to the New York area

25    as possible so that your friends and family members can visit

D821dors

1  you as much as possible.  As I said, I can't order that.  The

2  Bureau of Prisons has a lot of demands on it, but hopefully

3  they'll be able to manage that.  I'll recommend it in as strong

4  as possible terms.

5          Now I should advise you that you have a right to

6  appeal this sentence if you wish.  So if you wish to appeal,

7  then you would need to file a notice of appeal within two

8  weeks.  So talk to Ms. Fontier about that.  She'll assist you

9  in filing a notice of appeal.  The briefs and everything else

10  will come later, but the notice of appeal is something that has

11  to be done in a timely manner.  So she'll assist you with that.

12          Is there anything else that I've overlooked that we

13  should discuss today?

14          MS. LESTER:  No, your Honor.  Thank you.

15          THE COURT:  Ms. Fontier?

16          MS. FONTIER:  Your Honor, I'm not -- you may have said

17  it but -- and I think ultimately it makes no real difference,

18  but I wasn't quite clear on whether the terms of supervised

19  release are consecutive or concurrent or --

20          THE COURT:  They're concurrent.  The terms of

21  supervised release are all concurrent.

22          MS. FONTIER:  Okay.  Thank you.

23          THE COURT:  By law they're required to be.  All right.

24          Okay.  So let me thank the marshals, let me thank the

25  court reporter, and thank you all for being here today.  It's a

D821dors

1    sad day, tragic day, but I imposed the sentence that I felt was

2    appropriate in light of all the circumstances.

3              So Mr. Dore, I wish you the best of luck.  I

4    understand you have family and friends who really do care about

5    you, and I hope you continue to maintain those relationships

6    while you're in custody.  Good luck to you.

7              THE DEFENDANT:  Thank you, your Honor.

8              THE COURT:  Thank you.

9              MS. FONTIER:  Thank you, Judge.

10             THE COURT:  Okay.  Thank you.

11                              o0o

12

13

14

15

16

17

18

19

20

21

22

23

24

25